## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ARCO NATIONAL
CONSTRUCTION, LLC
f/k/a ARCO NATIONAL COMPANY,
INC.

    *Plaintiff*,

    v.

MCM MANAGEMENT CORP.

    *Defendants*.

Civil Action No.  ELH-20-3783

## MEMORANDUM OPINION

This breach of contract case pits a general contractor, plaintiff ARCO National Construction, LLC f/k/a ARCO National Company, Inc.  ("ARCO"), against its subcontractor, defendant MCM Management Corp.  ("MCM").  ECF 1 (the "Complaint").  ARCO asserts that MCM failed to complete "landfill clean up" services as required under a contract as well as a subsequent "Settlement Agreement."  *Id.* ⁋ 8, 18.  According to ARCO, as a result of MCM's breach of contract, ARCO will be required to complete work that MCM was contractually obligated to perform, resulting in damages "in the amount of at least $650,000.00, plus attorney's fees and other costs."  *Id.* ⁋ 19.  Plaintiff has appended to the Complaint a copy of the original Subcontract (ECF 1-1), the Change Orders associated with the Subcontract (ECF 1-2), and the parties' Settlement Agreement (ECF 1-3; ECF 9).[1]

---

[1] Plaintiff initially filed a notice with the Complaint (ECF 1-3), indicating that it would file a document under seal.  It subsequently docketed the Settlement Agreement under seal at ECF 4-1.  On January 4, 2021, I ordered plaintiff to submit a redacted version, appropriate for the public docket, or, alternatively, to explain why the Settlement Agreement should remain under seal.  ECF 7.  On January 20, 2021, ARCO docketed the Settlement Agreement, with minor redactions.  *See* ECF 9.  Therefore, I shall grant ECF 3, plaintiff's unopposed Motion to Seal.  Throughout this opinion, I shall cite to the Settlement Agreement at ECF 9.

MCM has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56. ECF 10. The motion is supported by a memorandum of law (ECF 10-1) (collectively, the "Motion") and two exhibits. ECF 10-2; ECF 10-3. Plaintiff opposes the Motion (ECF 12; ECF 12-1) (collectively, the "Opposition"), accompanied by an affidavit from one of its officers (ECF 12-3). MCM has replied. ECF 13 (the "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.       Factual Background

In August 2015, ARCO entered into a contract ("Subcontract") with MCM, wherein MCM agreed to provide excavation and utility installation services for the construction of a sorting facility, known as the "FedEx Ground – Sparrows Point" (the "Project"), located in Baltimore. ECF 1, ⁋ 5; ECF 1-1 at 1. Under the terms of the Subcontract, ARCO agreed to pay MCM $220,590 for the work, as well as further compensation for all agreed upon change orders. ECF 1, ⁋ 6; ECF 1-1 at 1. The Subcontract ultimately reached a total of $10,105,908.23. ECF 1, ⁋ 6; ECF 9 at 7; *see generally* ECF 1-2.

At some point before May 2017, a dispute arose between ARCO and MCM pertaining to an alleged outstanding payment MCM claimed it was owed, over and above the terms of the Subcontract. ECF 1, ⁋ 7. In May 2017, ARCO and MCM reached an agreement resolving their dispute, the terms of which were memorialized in the "Settlement Agreement." *Id.*; ECF 9. The Settlement Agreement expressly provides that MCM and ARCO "settled their dispute in connection with the Project, the Subcontract, and the Lawsuits." ECF 9 at 1.

Notably, the Settlement Agreement incorporates Change Order #25-S ("Change Order"), which "provides for" an upward "adjustment of the aggregate Subcontract Sum" in the amount of $150,000, and "adds work to the Subcontract Scope of Work to be performed by MCM."  ECF 9 at 2, ¶ 2(b).  Affirming MCM's outstanding obligations, the Subcontractor Final Payment Affidavit, Release, and Waiver of Liens, an exhibit incorporated in the Settlement Agreement, provides that MCM "completed all of its work on the Project, except for the work described in Change Order #25-S."  *Id.* at 14, ¶ 1(a).

The Change Order specifies that ARCO would pay $100,000 to MCM "pursuant to the Settlement Agreement," as well as an additional $50,000 for "Landfill clean up" services, if those services were completed by May 26, 2017, and to the satisfaction of the project owner, Tradepoint Atlantic, LLC ("TPA").  *Id.* at 7.[2]  If TPA failed to accept the work by the completion date, however, the Change Order provides that the "Subcontract Sum" would be "automatically reduced" by $50,000.  *Id.*[3]

---

[2] There appears to be some confusion over TPA's role in the Project.  In its Complaint, ARCO identified TPA as the Project's owner.  ECF 1, ¶ 9. Defendant also identified TPA as the owner.  ECF 10-1 at 1; ECF 13 at 2.  However, the terms of the Settlement Agreement and plaintiff's Opposition indicate that TPA was instead the Project's landlord, while another party, Scannell Properties #191, LLC ("Scannell"), is the Project's owner.  ECF 12-1 at 2, ¶¶ 1-2; ECF 9 at 10, 14.

[3] Change Order #25-S states, in part, as follows, ECF 9 at 7:

**YOU ARE DIRECTED TO MAKE THE FOLLOWING CHANGES IN THIS SUBCONTRACT**

| Item # | Phase | Description | Amount |
|---|---|---|---|
| 1 | 02-1100 | Settlement amount payable pursuant to Settlement Agreement dated May 2017 between Contractor and Subcontractor. | $100,000.00 |
| 2 | 02-1100 | Landfill clean-up – Removal of all visible and/or known rock, brick, concrete, and debris larger than 6". Removal | $50,000.00 |

ARCO asserts, and MCM does not dispute, that MCM failed to meet the deadline contemplated by the Change Order.  ECF 1, ¶ 10.  The Complaint alleges that, "following the issuance of CO #25S, MCM made representations to ARCO that the work was being performed, and /or that it was negotiating with the Owner to revise the agreed scope of work."  *Id.*  Further, ARCO claims that during the ensuing three years, and as late as January 2019, TPA communicated several confirmations to ARCO that "MCM was continuing to perform its work" and that the work would soon be completed.  *Id.* ¶ 10-11.  However, on July 24, 2020, ARCO "was formally informed by [TPA] that [MCM's] work was never completed and that MCM now refuses to complete its scope of work," as required by the Change Order.  *Id.*  ¶ 12.  Therefore, ARCO asserts that it "will be required to complete the work that MCM is contractually obligated to perform, at significant cost to ARCO . . . ."  *Id.*

Thereafter, on December 30, 2020, ARCO filed this suit.  Jurisdiction is founded on diversity of citizenship.  *See* 28 U.S.C. § 1332(a).

---

of all wood, railroad ties and other material that cannot be processed as part of any future soil remediation.  All material to be hauled to an MCM controlled location or other mutually agreed to location with TPA.  As part of this Scope of Work, MCM will secure a letter of approval from TPA acknowledging that the landfill clean-up work is complete.  Upon receipt of this letter of approval, ARCO will release payment for the landfill clean-up.  This work will be completed and accepted in writing by TPA no later than May 26, 2017 (Completion Date).  If this landfill clean-up scope is not completed by the Completion Date, or if Contractor has not received written acceptance from TPA of this work by the Completion Date, then the Subcontract Sum will be automatically reduced by $50,000 without further change orders or action by either party.

Total                                                                 $150,000.00

MCM, for its part, alleges that it was "immediately ready, willing, and able to perform the work called for" in the Change Order.  ECF 10-1 at 2.  However, MCM avers that it was unable to fulfill its contractual obligation because TPA is not a party to the Settlement Agreement and, as the Project owner, TPA "needed to give permission to MCM" so that it could begin its work.  *Id.* Moreover, MCM alleges that, after a dispute arose between ARCO and TPA regarding an unrelated matter, ARCO retaliated by "barr[ing] MCM from gaining control of the Project site and performing the landfill cleanup work until TPA signed a release satisfactory to Arco."  *Id.* at 2-3. Further, MCM claims that it "assisted Arco with negotiating and obtaining a release from TPA, however, Arco unreasonably rejected all of the releases proposed by TPA and continued to prevent MCM from accessing the project site and performing the landfill cleanup work."  *Id.* at 3. Meanwhile, MCM alleges that it "continued to perform work under its direct contract with TPA." *Id.*

In July 2020, this dispute boiled over when, according to MCM, TPA "refused to release a $1,100,000 payment it owed to MCM," because ARCO "falsely informed TPA that MCM was to blame for the landfill clean-up work not being completed, thereby causing TPA to breach its contract with MCM."  ECF 10-1 at 3.  Then, on August 5, 2020, MCM sued ARCO in a Michigan state court for "tortious interference with contract, tortious interference with prospective economic advantage, and for declaratory relief."  *Id.* [4]

In the Motion, MCM advances numerous grounds to support its request for dismissal.  It argues that plaintiff's claim fails because it does not allege an amount in controversy sufficient to invoke this Court's diversity jurisdiction.  ECF 10-1 at 6.  In addition, MCM contends that the suit

---

[4] On March 3, 2021, the Michigan court dismissed the case, concluding that the court lacked personal jurisdiction over ARCO. *MCM Management Corp. v. ARCO Nat'l Construction, LLC*, Case No. 20-009960-CB (Mich. Cir. Ct. Mar. 3, 2021).

is barred by Maryland's three-year statute of limitations for breach of contract claims.  ECF 10-1.
at 6-8.   Moreover, MCM asserts that, to the extent that plaintiff's claim is premised on the
underlying Subcontract, the claim should be dismissed.  *Id.* at 8-9.   And, MCM contends that,
because the Subcontract includes an arbitration clause, this Court is barred from adjudicating the
claim. *Id.* at 7 n.1, 10.  Defendant asserts that it was not required to complete its obligations under
the Settlement Agreement until TPA gave MCM permission to proceed, a condition precedent that
ARCO did not plead with sufficient particularity to satisfy Fed. R. Civ. P. 9(c).  ECF 10-1 at 9-10.
And, defendant claims that ARCO knew or should have known that the Complaint was fatally
deficient, and therefore its submission "constitute[s] a violation of Fed.  R.  Civ. P. 11." *Id.*  at 10.

In the Opposition, ARCO argues that its claim puts, at minimum, the sum of $150,000 in
controversy, and thereby successfully invokes this Court's diversity jurisdiction.  ECF 12-1 at 6-
10.  ARCO further contends that its cause of action did not arise until July 2020 and, consequently,
the claim is well within the relevant statute of limitations or, in the alternative, that the statute of
limitations was tolled because of MCM's continued assurances that its performance was ongoing.
*Id.* at 10-12.  And, in plaintiff's view, defendant's remaining arguments are baseless: its suit is
premised upon the Settlement Agreement, and therefore an argument that an arbitration clause in
the Subcontract must be enforced is "nonsensical";[5] and, no condition precedent was included in
the Settlement Agreement that prevented MCM from completing its work under the contract.  *Id.*

---

[5] ARCO appears to abandon its claim in the Complaint that MCM is liable to ARCO under
both the Settlement Agreement as well as the Subcontract.  *Compare* ECF 1, ⁋ 18 ("MCM has
failed to complete its scope of work as agreed. Its failure to perform is a material breach of the
Subcontract and the Settlement Agreement . . . .") *and* ECF 12-1 at 13 ("MCM also claims (and
ARCO concedes) that the Settlement Agreement subsumes the Subcontract. MCM's failure and
refusal to perform the agreed scope under the Settlement Agreement . . . therefore results in a
material breach of the Settlement Agreement.").

at 12-14.   ARCO also submits that it filed the Complaint in good faith and that MCM's "characterization of ARCO's actions violating [Rule 11] should be stricken."  ECF 12-1 at 14.

In MCM's reply, it argues that ARCO had notice of MCM's alleged breach of contract when ARCO learned that MCM had not completed the scope of work by May 26, 2017, the deadline specified in the Change Order.  ECF 13 at 2-3. Therefore, it asserts that there is no basis for the tolling of limitations.  *Id.* at 5-6.

The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons set forth below, I will deny the Motion.

## II.   Legal Standards

### A.   Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P.   12(b)(1).   Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quotation marks and citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.

1997).  In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

MCM raises a factual challenge to the Court's subject matter jurisdiction, alleging that the record does not support ARCO's claim that $650,000 is in dispute.  *See* ECF 10-1 at 6.  To resolve the challenge to this Court's jurisdiction, I may consider the exhibits included with the Complaint (ECF 1-1; ECF 1-2; ECF 9), the Motion (ECF 10-2; ECF 10-3), and plaintiff's Opposition (ECF 12-3).

### B.  Rule 12(b)(6), Rule 12(d), Rule 56

As noted, defendants have moved to dismiss the Complaint for failure to state a claim or, in the alternative, for summary judgment.  A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of

extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv*. *Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th

Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).

No discovery has occurred in this case. However, ARCO, as the nonmoving party, has not filed an affidavit under Rule 56(d), nor has it otherwise indicated that discovery is necessary.

Nevertheless, I am of the view that summary judgment would be premature because the factual record is not fully developed.  Therefore, I decline to convert the Motion to one for summary judgment.  Rather, I shall construe the Motion as a motion to dismiss under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading

standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co*., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d

515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).  But, a court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion.  *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'"  *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).

Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."  *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg. v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows. Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998); *see USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, ___F. App'x___, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021).  And, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 882 F.3d at 167. In other words, the "general rule" is that "the exhibit prevails in the event of a conflict between an

attached exhibit and the allegations of a complaint." *Goines*, 882 F.3d at 165.  But, "in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* at 167.

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __U.S. __, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

As indicated, ARCO submitted three exhibits with its Complaint: the underlying Subcontract, all Change Orders to the Subcontract that preceded the Settlement Agreement, and the Settlement Agreement.  *See* ECF 1-1; ECF 1-2; ECF 9.  Because they are integral to the Complaint, I may consider them in resolving the Motion.

With the Motion, MCM included an affidavit of its president, Craig Sickmiller, and an email sent to Mr. Sickmiller by ARCO's vice president, Brandon Lemmons.  ECF 10-2; ECF 10-3.  And, ARCO included an affidavit of Mr. Lemmons as an exhibit with its Opposition.  ECF 12-3.  Plaintiff did not rely on these exhibits in the Complaint, nor are they integral to the suit. Therefore, I shall not consider them in resolving the Motion.

Notably, I may "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F.App'x. 200 (4th Cir. 2016); *see* Fed. R. Evid. 201(b)(2); *see also Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"); *Schultz v. Braga*, 290 F.Supp.2d 637, 651 n. 8 (D. Md. 2003) (taking judicial notice of dockets in state proceedings). Therefore, I may take judicial notice of the order issued by the Michigan court on March 3, 2021, granting ARCO's motion for "summary disposition" in MCM's suit against ARCO, on the ground that the court "lacks personal jurisdiction over the Defendant."

### C. Choice of Law

Jurisdiction in this case is based on diversity of citizenship. ECF 1, ¶ 1; *see* 28 U.S.C. § 1332. Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938), it is "a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417, (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)); *Anand v. Ocwen Loan Serv., LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Consequently, the interpretation of a contract, such as the Settlement Agreement, is a matter of state law. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004).

Because Maryland is the forum state, I must apply Maryland substantive law, including its choice of law rules, to determine which state's substantive law applies to the Agreement. As to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci*

*contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g. Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Lewis v. Waletzky*, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

No information has been presented to establish the state where the Settlement Agreement was executed. However, the Settlement Agreement contains a choice of law provision that expressly provides: "The terms and conditions of this agreement shall be governed by, interpreted, and construed in accordance with the laws of the state of Maryland without regard to principles of conflicts of law." ECF 9 at 4, ⁋ 13. Moreover, the parties agree that Maryland law governs this claim. *See* ECF 10-1 at 7; ECF 12-1 at 13. Accordingly, I shall apply the substantive law of Maryland.

### III.   Discussion

### A.  Subject Matter Jurisdiction

As an initial matter, defendant contends that plaintiff has not alleged the required amount in controversy for the purpose of diversity jurisdiction. In its view, the Complaint and the exhibits establish that ARCO's remedy for breach of the Change Order is limited to a deduction of $50,000 from the settlement amount payable to MCM. ECF 10 at 1.

Federal courts are courts of limited jurisdiction. *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 432 (4th Cir. 2014) (quotation marks omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Thus, a federal district court may adjudicate a case only if it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (internal quotation marks omitted). As the Fourth Circuit stated in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), if a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's [subject matter] jurisdiction over the matter."

Notably, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen,* 511 U.S. at 377). Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz Corp. v. Friend*, 599 U.S. 77, 95 (2010); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).

Of relevance here, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon Mobil Corp.,* 545 U.S. at 552; *see* 28 U.S.C. § 1332. This is known as diversity jurisdiction, which "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir. 2011); *see Strawbridge v. Curtiss,* 7 U.S. 267 (1806).

With respect to the amount-in-controversy requirement for diversity jurisdiction, the Supreme Court has articulated two standards that are seemingly in tension. On the one hand, in *Saint Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283 (1938), the Court said: "The rule governing dismissal for want of jurisdiction . . . is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 288–89 (emphasis added) (internal footnotes omitted). In other words, "if, from the face of the pleadings, it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed . . . the suit will be dismissed." *Id.* at 289 (emphasis added).

On the other hand, in *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178 (1936), the Supreme Court considered a complaint that was "destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $3,000," which was then the statutory amount-in-controversy threshold. *Id.* at 181. The "particular allegations" of the complaint shed no further "light upon that subject." *Id.* The Court said that the plaintiff "must allege in his pleading *the facts* essential to show jurisdiction." *Id.* at 189 (emphasis added). The Court continued: "The authority which the statute vests in the court to enforce the limitations of its jurisdiction *precludes the idea that jurisdiction may be maintained by mere averment* . . . If [the plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof." *Id.* (emphasis added).

In *Momin v. Maggiemoo's International, LLC,* 205 F. Supp.2d 506 (D. Md. 2002), Judge Blake of this court harmonized the teachings of *McNutt* and *Saint Paul Mercury*. She observed that, "[i]n determining whether an amount in controversy is sufficient to confer jurisdiction,"

20

courts have applied "one of two legal standards depending on whether the damages are specified or unspecified in the complaint." *Momin*, 205 F.Supp.2d at 509.[6]

Under the first standard, "[w]here a plaintiff claims a specific amount in damages," greater than the $75,000 threshold, the opponent of jurisdiction must controvert the plaintiff's assertion to a "'legal certainty.'" *Id.* (citation omitted). The Fourth Circuit stated in *JTH Tax, Inc. v. Frashier,* 624 F.3d 635 (4th Cir. 2010): "If the plaintiff *claims a sum* sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed.'" *Id.* at 638 (emphasis in *JTH Tax*) (citation omitted).

In other words, a jurisdictional challenge to an amount in controversy specified in the suit will fail if "a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp,* 280 F.3d 883, 885 (8th Cir. 2002). In that circumstance, a defendant "seeking dismissal of [a] diversity action[ ] for lack of a sufficient amount in controversy, must . . . shoulder a heavy burden;" the opponent of jurisdiction "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *JTH Tax,* 624 F.3d at 638 (citation omitted).

However, where "a plaintiff's complaint does not allege a specific amount in damages," a different standard applies. *Momin,* 205 F.Supp.2d at 509 (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot,*

---

[6] *Momin* arose in the context of removal, and thus the burdens were reversed. As the party asserting diversity jurisdiction as a basis for removal, the defendant had the burden to establish jurisdiction. However, there is no reason to conclude that Judge Blake's analysis is any less valid in a situation in which the plaintiff's assertion of jurisdiction is challenged by the defendant.

*Inc.,* 204 F.3d 1069 (11th Cir. 2000)).  In that situation, the proponent of jurisdiction must "prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."  *Momin,* 205 F.Supp.2d at 510 (quoting *Tapscott*, 77 F.3d at 1357).  "In such cases, '[a] lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer.'"  *Momin,* 205 F.Supp.2d at 510 (quoting *Tapscott*, 77 F.3d at 1357) (citation omitted).  This is consistent with the "well-pleaded complaint" rule, under which the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint."  *Pinkley, Inc. v. Cty. of Frederick,* 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt*); *accord El v. AmeriCredit Fin. Servs., Inc.,* 710 F.3d 748, 752 (7th Cir. 2013) ("The fact that the plaintiff *alleged* an amount in controversy in excess of $75,000 . . . does not establish that this is the amount in controversy.") (emphasis in original).

Here, the first standard applies.  The crux of the Complaint is that MCM failed to fulfill its contractual obligations under the terms of the Settlement Agreement and, as a result, ARCO incurred damages that "may exceed $650,000."  ECF 1, ⁋ 13.  Therefore, MCM shoulders the burden of demonstrating that the amount in controversy is less than $75,000.  At this juncture, it has not met its burden.

Defendant maintains that the amount in controversy between the parties does not exceed $75,000 because the Complaint's $650,000 "figure is not supported by any factual allegation in the Complaint."  ECF 10-1 at 6.  Specifically, MCM avers: "In this case, the contract price for Change Order #25-S – the only contract that was deemed not fully performed by the Settlement Agreement, was $50,000."  *Id.*

In response, ARCO argues that the Change Order "sets forth the parties [sic] agreed settlement sum of $150,000, $100,000 of which was paid to MCM prior to its completion of its

agreed scope of work." ECF 12-1 at 8. But, ARCO contends that this work was never performed. ECF 12-1 at 8. Additionally, plaintiff asserts: "ARCO will be required to complete the work that MCM is contractually obligated to perform, at significant cost to ARCO, and may incur additional costs assessed by the Owner as a result of the delayed completion." ECF 1, ⁋ 12. Specifically, "based on unit pricing MCM provided," ARCO estimates that the cost of completing MCM's work will likely exceed $500,000. ECF 12-1 at 9. In sum, ARCO contends that, because of the breach of the Settlement Agreement and the cost to complete MCM's work, the amount in controversy "may exceed $650,000." ECF 1, ⁋ 13.

As MCM suggests, if the only remedy is the deduction of the outstanding balance of $50,000, ARCO's claim would amount to $50,000, a sum insufficient to establish diversity jurisdiction in federal court. ECF 10-1 at 6. However, ARCO's claim is not only that MCM failed to complete its required work under the Settlement Agreement by a specified deadline. Instead, ARCO claims that MCM failed *altogether* to complete its required work under the Settlement Agreement. *See* ECF 1, ⁋ 18.

The Settlement Agreement "provides for an adjustment of the aggregate Subcontract Sum . . . and adds work to the Subcontract Scope of Work to be performed by MCM as set forth in the [Change Order]." ECF 9 at 2, ⁋ 2(b). More to the point, the Change Order specifies that ARCO was to pay MCM $100,000 "pursuant to the Settlement Agreement" and $50,000 for "Landfill clean up services," amounting to a total sum of $150,000. ECF 9 at 7. Further, ARCO claims this total represents "the value of MCM's remaining scope of work." ECF 12-1 at 8. In its view, the payment of $100,000 represented an advance payment for MCM's work under the Change Order, while the remaining $50,000 represented a "bonus to incentivize MCM to meet the negotiated completion date." *Id.* at 8; *see* ECF 12-3, ⁋ 21.

MCM does not offer an alternative characterization of the initial payment. Rather, it claims only that "the contract price for Change Order #25-S—the only contract that was not deemed fully performed by the Settlement Agreement, was $50,000.00." ECF 10-1 at 6. But, defendant ignores the $100,000 that ARCO alleges was an advanced payment for MCM's anticipated performance. In ARCO's view, MCM forfeited the $50,000 bonus when it failed to perform by the deadline of May 26, 2017. *See* ECF 12-1 at 8. But, ARCO also puts payment of the $100,000 at issue.

Moreover, as noted, ARCO alleges that, "based on unit pricing MCM provided," the cost of completing MCM's incomplete work will exceed $500,000. ECF 12-1 at 9; ECF 12-3 ¶ 13. That sum far exceeds the jurisdictional threshold of $75,000.

In claims for breach of contract, "a party injured . . . 'has a right to damages based on his expectation interest," *Sloane v. Stanley G. House & Assocs., Inc.,* 311 Md. 36, 42, 532 A.2d 694, 697 (1987) (quoting Restatement (Second) of Contracts, § 347 (1981)) or, put another way, "that sum which would place the plaintiff in as good a position as that in which the plaintiff would have been, had the contract been performed." *Beard v. S/E Joint Venture* 321 Md. 126, 134, 581 A.2d 1275, 1279 (1990). Plaintiff allegedly contracted for payment of $150,000, of which $100,000 was paid before the work was completed, with the remaining $50,000 constituting an incentive payment. *See* ECF 10-1 at 6. Given MCM's alleged failure to perform in full, ARCO estimates that it will cost ARCO $500,000 to complete the work. *See* ECF 12-1 at 9; ECF 12-3 ¶ 13.

Prognostication about plaintiff's likelihood of success is not appropriate here. The core allegation in the Complaint is that MCM did not perform according to the terms of the Settlement Agreement or the Change Order. As a result, ARCO claims that it is now obligated to complete this work, at considerable expense. *See* ECF 1, ¶ 12. And, MCM does not offer any evidence to dispute ARCO's estimate of $500,000 in damages.

Accordingly, I am persuaded that the Complaint adequately alleges an amount in controversy of more than $75,000.

## B. Statute of Limitations

MCM asserts that ARCO's claim for breach of contract accrued on May 26, 2017, the "completion date" for MCM's performance according to Change Order #25-S.  ECF 10-1 at 6.  Therefore, MCM contends that, under Maryland law, limitations expired on May 26, 2020.  *Id.* at 7.  Yet, suit was not filed until December 30, 2020.  *See* ECF 1.

Ordinarily, the defense of limitations is not considered in the context of a motion to dismiss.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004).  However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 985 (D. Md. 2002); *see Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

For the reasons previously stated, the Court may consider several exhibits, including the Settlement Agreement.  ECF 9.  It was executed by MCM on May 9, 2017, and by ARCO on May 11, 2017.  ECF 9 at 5, 16.  The Settlement Agreement references the deadline of May 26, 2017, for "Landfill Clean-up," pursuant to the Change Order.  *Id.* at 7.

Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise.  Md. Code (2013 Repl. Vol., 2018 Supp.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J.").  Contract actions are generally governed by Maryland's three-year statute of limitations.  *See Kumar v. Dhanda*, 198

Md. App. 337, 342-43, 17 A.3d 744, 747-48 (2011) (noting that three-year statute of limitations applies to breach of contract claims)). In addition, "[i]f the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be instituted, equity will follow the law and bar the action." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 160 n.2, 857 A.2d 1095, 1099 n.2 (2004) (citation omitted).

"Limitations statutes . . . are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy." *Georgia-Pacific Corp. v. Benjamin,* 394 Md. 59, 85, 904 A.2d 511, 526 (2006); *see Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983). "As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

The question here turns on when the claim accrued for purposes of limitations. An action typically accrues at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011). Ordinarily, "'the question of accrual in [C.J.] § 5-101 is left to judicial determination,' unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Poole*, 423 Md. at 131, 31 A.3d at 236 (citation omitted); *see Bank of New York v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was filed); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d at 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on

26

fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

Of relevance here, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," Maryland has adopted the so-called discovery rule to determine the date of accrual. *Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc.*, 383 Md. at 167, 857 A.2d at 1104.

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F.Supp.2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445, 749 A.2d 796, 801 (2000)), *aff'd*, 495 Fed. Appx. 350 (4th Cir. 2012). Notably, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.'" *Dual Inc.*, 383 Md. at 167-68, 857 A.2d at 1104 (citing *Am. Gen. Assurance Co. v. Pappano*, 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 188-89, 689 A.2d 634, 644 (1997)). A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d at 1095 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1159 (1988)) (alterations in original).

Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 636-38, 431 A.2d 677, 680-81 (1981). But, "[c]onstructive notice or knowledge will not suffice for inquiry notice." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see Poffenberger*, 290 Md. at 637, 431 A.2d at 681.

Application of the discovery rule involves a two-prong test. The Maryland Court of Appeals has explained that the first prong, "sufficiency of the actual knowledge to put the claimant on inquiry notice," concerns "the nature and extent of actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained." *Benjamin*, 394 Md. at 89, 904 A.2d at 529. "'Express knowledge is direct, whether written or oral, from sources 'cognizant of the fact[s].''" *Benjamin*, 394 Md. at 89, 904 A.2d at 529 (quoting *Poffenberger*, 290 Md. at 636-37, 431 A.2d at 681) (citation omitted). Implied notice occurs "when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further." *Pennwalt*, 314 Md. at 447, 550 A.2d at 1163.

The second prong, "the sufficiency of the knowledge that would have resulted from a reasonable investigation," requires that after an investigation of the facts presented, a reasonably diligent inquiry would have disclosed whether there is a causal connection between the injury and the wrongdoing. *Benjamin*, 394 Md. 59, 904 A.2d at 529; *see Pennwalt*, 314 Md. at 452, 550 A.2d at 1165; *Baysinger v. Schmid*, 307 Md. 361, 367-68, 514 A.2d 1, 4 (1986). "The requirement for inquiry notice is that if a person investigates diligently, the causal connection would be revealed." *Benjamin*, 394 Md. 59, 904 A.2d at 529.

From MCM's perspective, ARCO was on inquiry notice as of May 26, 2017, the date identified by the Change Order as the deadline by which MCM was required to complete its work in order to obtain the additional $50,000 payment, and which it undisputedly failed to meet. *See*

ECF 10-1 at 6-8; ECF 1, ¶¶10-12.  Given that ARCO had actual knowledge that MCM's performance was due by this deadline and that MCM had not timely performed, MCM argues that ARCO's breach of contract claim necessarily accrued on that date.  ECF 10-1 at 7.  And, ARCO did not file this case within three years of that date.  *Id.*

ARCO counters that the breach of contract did not occur until July 24, 2020.  ECF 12-1 at 10.  In its view, MCM's failure to fulfill its obligations by May 26, 2017, was not a material breach of the Settlement Agreement.  *Id.*  Rather, on that date, MCM "merely forfeited its right to additional funds for prompt completion."  *Id.*; *see also id.* at 11.  According to ARCO, MCM's breach of contract did not occur until July 24, 2020, when plaintiff was provided with "notice of MCM's failure to complete its remaining work and then its utter refusal to complete the work at all."  *Id* at 10.

In the alternative, ARCO argues that it received repeated assurances from MCM and TPA that MCM would perform, despite its failure to do so by May 26, 2017.  *Id.* at 11-12. These assurances, in its view, "tolled" limitations, *id.* at 11, and give rise to a dispute of material fact as to when ARCO was on notice that MCM would not perform the agreed scope of work.  *Id.* at 12.

According to the Complaint, "following the issuance of Change Order #25-S, MCM made representations to ARCO that the work was being performed" and that MCM "was negotiating with the owner to revise the agreed scope of work."  ECF 1, ¶ 10.  Moreover, ARCO alleges that it received an update from TPA in March 2018, confirming "that MCM was continuing to perform its work," which "would be completed in May 2018."  *Id.*  And, according to the Complaint, as late as January 2019, TPA reaffirmed that the work was still being performed.  *Id.*  ¶ 11.  It was not until July 24, 2020, that ARCO learned from TPA that MCM was refusing to perform.  *Id.* ¶ 12.

29

As defendant notes, *see* ECF 13 at 5-6, ARCO does not point to any authority suggesting that tolling applies. *See* ECF 12-1 at 11-12. To the extent that plaintiff seeks to rely on *Frederick Rd. Ltd. P'ship* to support this proposition (*id.* at 9-10), such reliance is misplaced. *See Frederick Rd. Ltd. P'ship*, 360 Md. 76, 756 A.2d 963. That case implicated a "corollary accrual doctrine" in regard to Maryland's general discovery rule: the "continuation of events" theory. *Id.* at 97, 756 A.2d at 974. It "serves to toll the statute of limitations where a continuous relationship exists between the parties." *Id.* at 97, 756 A.2d at 974; *see also Hecht v. Resolution Trust Corp.*, 333 Md. 324, 337, 635 A.2d 394, 401 (1994) ("In addition to the discovery rule, Maryland has recognized . . . [t]he continuation of events theory," which "was first recognized by this Court in *W., B & A. Elec. R.R. Co. v. Moss*, 130 Md. 198, 100 A. 86 (1917) . . . .") (internal quotations omitted).

Pursuant to this doctrine, when a confidential or fiduciary relationship exists between the parties, the statute of limitations for claims arising between the parties may, in some circumstances, extend until the termination of that relationship. *See Frederick Rd. Ltd. P'ship*, 360 Md. at 97-98, 756 A.2d at 975 ("[A] relationship which is built on trust and confidence generally gives the confiding party the right to relax his guard and rely on the good faith of the other party so long as the relationship continues to exist. The confiding party . . . is under no duty to make inquiries about the quality or bona fides of the services received, unless and until something occurs to make him or her suspicious."); *see also Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 490-91, 723 A.2d 14, 18 (1999); *Fitzgerald v. Bell*, 246 Md. App. 69, 89, 227 A.3d 796, 808 (2020); *Supik v. Bodie*, 152 Md. App. 698, 714-15, 834 A.2d 170, 179 (2003). In this context, limitations may only begin to run prior to the termination of such a relationship upon a showing that plaintiff "acquire[d] knowledge during the existence of the confidential relationship that the confidential relationship

has been abused, or c[a]me into possession of facts which put him or her upon inquiry notice, which, if pursued would have disclosed the abuse." *Frederick Rd. Ltd. P'ship*, 360 Md. at 99, 756 A.2d at 976.

The continuous event doctrine is inapposite here because MCM and ARCO do not share a fiduciary or confidential relationship that would warrant the tolling of limitations beyond the date of MCM's breach. Accordingly, Maryland's discovery rule, as discussed earlier, governs this case.

Yet, MCM's reliance on *Kodor Assocs. Ltd. P'ship v. Rose,* AW-06-1256, 2006 WL 8456972 (D. Md. Jul. 6, 2006), *aff'd*, 226 F. App'x 327 (4th Cir. 2007), is equally unavailing. *See* ECF 13 at 5. The plaintiffs in that case hired the defendant to provide "architectural services to construct [plaintiff's] residence. *Kodor Assocs. Ltd. P'ship*, AW-06-1256, 2006 WL 8456972, at *1. The dispute began when plaintiffs had to "expend additional funds, over the estimate, because defendant failed to deliver the drawings to the builder on time," which later caused construction to grind to a halt. *Id.* After months of delay, the plaintiffs sent defendant a series of letters indicating that they had incurred substantial damages as a result of the defendant's inaction, requesting assurances that the defendant would perform under the contract, and warning that the defendant's actions likely constituted a breach of contract. *Id.* When defendant subsequently failed to assuage the plaintiffs' concerns, the plaintiffs sent the defendant a letter terminating their contract with defendant. *Id.*

Three years and two weeks after the date of mailing that last letter, plaintiffs brought a claim for breach of contract. *Id.* In response, defendant moved to dismiss the claim, asserting that it was barred by Maryland's three-year statute of limitations. *Id.* at *2. The plaintiffs argued that the statute of limitations did not begin to run until the date by which they learned of the full extent of the damages caused by the defendant's breach, about seventeen days after the plaintiffs

terminated the contract at issue.  *Id.*  The court rejected that view, stating that "the statute of limitations begins to run at the moment breach is reasonably discoverable, not at the moment when the extent of the damages is ascertainable."  *Kodor Assocs. Ltd. P'ship*, AW-06-1256, 2006 WL 8456972, at *3.  Instead, the court agreed with the defendant, concluding that the statute of limitations began to run no later than the day on which the plaintiffs sent their final letter to defendant.  *Id.*  The Fourth Circuit affirmed, highlighting that, by the time plaintiffs sent the letter, they were aware that they had sustained damages as a result of the defendant's breach and communicated to the defendant that they were terminating the contract.  *See Kodor Assocs. Ltd. P'ship*, 226 F. App'x at 329.

Here, taking the allegations in the Complaint as true, plaintiff did not communicate to defendant on May 26, 2017, that it believed the failure to meet this deadline constituted a breach of the Settlement Agreement.  Moreover, this case is distinguishable from *Kodor* because defendant's delay in this case did not conclusively violate the parties' agreement.  According to plaintiff, the deadline specified in the Change Order pertained only to the time by which defendant might secure a bonus of $50,000.  ECF 12-1 at 8.  The Settlement Agreement does not provide that a failure of MCM to perform by that date would constitute a breach of contract.  To the contrary, the Change Order specified that, in the event of delay beyond May 26, 2017, the agreed upon "Subcontract Sum [would] be automatically reduced by $50,000 without further change orders or action by either party."  ECF 9 at 7.

At this juncture, the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440; *see State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536, 558 (D. Md. 2019).  And, on the face of the

Complaint, ARCO plausibly asserts that it was not on actual or inquiry notice of MCM's breach of contract on May 26, 2017.  Rather, ARCO claims that it did not obtain such notice until July 2020, when TPA communicated that MCM was refusing to complete the work.  ECF 12-1 at 10. Accordingly, I decline to dismiss the suit on the basis of limitations.

## C.  Breach of Contract

As to the merits of plaintiff's Complaint, MCM argues that ARCO impeded its performance by its interference with the Project.  ECF 10-1 at 9.  Specifically, MCM claims that ARCO "interfered with MCM's ability to perform its required scope of work by unreasonably demanding that TPA sign a release in favor of ARCO . . . and then made MCM's performance impossible by refusing to sign the release ARCO demanded from TPA and refusing to allow MCM access to the Project site."  *Id.*

For this reason, MCM contends that ARCO's acceptance of this release form was, in effect, a condition precedent to MCM's performance.  *Id.*  at 9-10.  And, because ARCO did not indicate in the Complaint that this condition precedent had occurred, MCM contends that the Complaint fails to comply with Fed. R. Civ. P. 9(c), and therefore the suit should be dismissed.  *Id.* at 10.

## 1.  General Contract Principles

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RICHARD A.  LORD, 1 WILLISTON ON CONTRACTS § 1:1, at 2-3 (4th ed.  1990); *accord* Restatement (Second) Contracts § 1, at 5 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006).  Of relvance here, "'[a] contract is formed when an unrevoked offer made by one person is accepted by another.'"  *Cty. Comm'rs for Carroll Cty.  v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209

(2008) (quoting *Prince George's County v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)).  Thus, mutual assent is an integral component of every contract.  *See, e.g.*, *Joseph Saveri Law Firm Inc. v. Michael E. Criden, P.A.*, 759 F. App'x 170 (4th Cir. 2019) (recognizing as a "bedrock principle of law" that an offeree must accept an offer to form a contract); *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process, LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).

"A settlement agreement is nothing more or less than a contract."  *Copeland v. Dapkute*, PWG-17-CV-1566, 2018 WL 5619672, at *4 (D. Md. Oct.  30, 2018); *see Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013) (per curiam).   In general, "settlement agreements are desirable and should be binding and enforceable." *Chernick v. Chernick*, 327 Md. 470, 481, 610 A.2d 770, 775 (1992).  Indeed, "[t]he policy of encouraging settlement is so important that, even when the parties later discover that the settlement may have been based on a [unilateral] mistake, settlement agreements will not be disturbed." *Nationwide Mut. Ins. Co. v. Voland*, 103 Md. App. 225, 237, 653 A.2d 484, 491 (1995).  Moreover, "courts should not meddle in the affairs of the parties by modifying terms of the agreement to assist a disadvantaged party." *Baltrotsky v. Kugler*, 395 Md. 468, 480, 910 A.2d 1089, 1096 (2006); *see Walther v. Sovereign Bank*, 386 Md. 412, 429-30, 872 A.2d 735, 746 (2005).  In the absence of "'fraud, duress, mistake, or some countervailing public policy,'" a party who voluntarily agrees to the terms of a contract is bound by it. *Baltrotsky*, 395 Md. at 480, 910 A.2d at 1097 (citation omitted).

In determining whether there is an enforceable contract, courts begin the analysis "by discussing the essential prerequisite of mutual assent to the formation of a contract . . . ." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 302, 107 A.3d 1183, 1189 (2015); *see also Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001) ("An

essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'" (citations omitted)). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran*, 398 Md. at 14, 919 A.2d at 708.

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cty. Comm'rs of Caroline Cty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders*, 178 Md. App. at 377-78, 941 A.2d at 1209-10; *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956) (stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable").

Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017); *see also Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7, 98 A.3d 264, 268 (2014); *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006); *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004); *Lema v. Bank of Am., N.A.*, 375 Md. 625, 641, 826 A.2d 504, 513 (2003); *Under*

*Armour, Inc. v. Ziger/Snead, LLP*, 232 Md. App. 548, 552, 158 A.3d 1134, 1136 (2017). "'The cardinal rule of contract interpretation is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224, 232 (2013) (citation omitted).

To determine the parties' intention, courts look first to the written language of the contract. *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006) ("[G]enerally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."). "'The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.'" *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 313, 829 A.2d 626, 632-33 (2003) (citations omitted).

"Maryland courts interpreting written contracts have long abided by the law of objective contract interpretation, which specifies that 'clear and unambiguous language' in an agreement 'will not give way to what the parties thought the agreement meant or was intended to mean.'" *Urban Growth Prop. Ltd. P'ship v. One W. Balt. St. Assocs. LLC*, No. 882, Sept. Term, 2015, 2017 WL 526559, at *5 (Md. Ct. Spec. App. Feb. 9, 2017) (citation omitted) (unpublished); *see Cochran*, 398 Md. at 16, 919 A.2d at 709; *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014) (internal quotations and alteration omitted). A court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean. *See Dumbarton*, 434 Md. at 51, 73 A.3d at 232; *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001); *see also, e.g., Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship,* 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("Where the language of a contract

is clear, there is no room for construction; it must be presumed that the parties meant what they expressed."), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).

The court's "task, therefore, when interpreting a contract, is not to discern the actual mindset of the parties at the time of the agreement." *Dumbarton*, 434 Md. at 52, 73 A.3d at 232. Rather, the court is to "'determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *Gen. Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)); *see Scarlett Harbor*, 109 Md. App. at 291, 674 A.2d at 142 ("[T]he court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated.").

"Generally, a breach of contract is defined as a 'failure, without legal excuse, to perform any promise that forms the whole or part of a contract.'" *Weaver v. ZeniMax Media, Inc.*, 175 Md. App. 16, 51, 923 A.2d 1032 (2007) (citing WILLISTON ON CONTRACTS § 63:1). Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (D. Md. 2015) (quoting *Kumar*, 198 Md. App. at 345, 17 A.3d at 749). To "prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *accord Belyakov v. Med. Sci. & Computing*, 86 F.Supp.3d 430, 437 (D. Md. 2015); *see also RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010).

In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005). "[A]

plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012) (citation omitted) (emphasis *in Polek*).

### 2.   Analysis

Plaintiff asserts a claim for breach of contract by MCM.  It alleges that MCM failed to perform the landfill clean up services specified in the Change Order and incorporated into the Settlement Agreement.  *See* ECF 1, ¶¶ 8, 12-14, 18; ECF 9 at 7.

As explained above, MCM contends that ARCO imposed a condition precedent to MCM's performance. ECF 10-1 at 9.  According to MCM, the Change Order constituted an agreement for MCM to perform "within Arco's scope of work for TPA, which could only be accomplished with TPA's permission and cooperation." *Id.*  MCM states, *id.*: "Arco interfered with MCM's ability to perform the landfill clean up work by unreasonably demanding that TPA sign a release in favor of ARCO, which was not contemplated in the Change Order . . . ."  It adds that "MCM's performance [was] impossible" because TPA refused to sign the release and refused to grant MCM access to the site. *Id.*  MCM argues that because ARCO failed to allege that TPA gave permission to MCM, ARCO's claim is fatally deficient under Fed. R. Civ. P. 9(c), and therefore suit must be dismissed pursuant to Rule 12(b)(6). *Id.* at 10.

In its Opposition, ARCO argues that this defense is "meritless" as "the letter of approval from TPA . . . could not have been a condition precedent to MCM starting work." ECF 12-1 at 12.  It posits that the Change Order required MCM to "secure a letter of approval from TPA acknowledging that the landfill work is *complete*." *Id.* at 12-13 (emphasis added); *see also* ECF 9 at 7.  In a footnote, ARCO also claims that a release was "not contemplated or required by the

Settlement Agreement," and so it concludes that "the release issue . . . does not go to the resolution of MCM's Motion."  ECF 12-1 at 13 n.1.

"A condition precedent in a contract is 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'"  *All State Home Mortgage, Inc. v. Daniel,* 187 Md. App. 166, 182, 977 A.2d 438, 447 (2009) (quoting *Chirichella v. Erwin,* 270 Md. 178, 310 A.2d 555, 557 (1973)), *cert.  denied,* 410 Md. 560, 979 A.2d 707 (2009).  Fed. R. Civ. P. 9(c) provides, in relevant part: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."

In 2 MOORE'S FEDERAL PRACTICE, § 9.04[1] (3d ed.1997) (internal references and citations omitted), it states:

> A general allegation of the performance or occurrence of a condition precedent is typically quite brief and to the point.  Thus, for a contract claim, it is sufficient that the pleader "tracks the language" of Rule 9(c) by alleging "all conditions precedent have occurred or been performed," or simply alleges that the claimant "has performed all of its obligations as an insured under the [p]olicy," or "has at all times performed all its proper and legitimate duties and obligations under its contract."

Similarly, Charles Alan Wright and Arthur R. Miller state in 5A FEDERAL PRACTICE & PROCEDURE (3rd ed. 2008), § 1302:

> [R]ule [9(c)] constitutes a departure from the common law requirement that the occurrence or performance of each condition precedent be alleged in detail. Instead, the rule follows the provisions found in many state codes that permit a general allegation of fulfillment of conditions precedent and require specific denials of performance to raise an issue for trial.

Wright and Miller also note: "Of course, if the defendant challenges the subdivision (c) averment [of satisfying the condition precedent], a disputed issue will have been raised that may be resolved only on a summary judgment motion or at trial."  *Id.*  § 1303.  As indicated, a motion

asserting failure of the complaint to state a claim typically "does not resolve contests surrounding the facts." *Goldsboro, supra,* 178 F.3d at 243 (internal quotation marks omitted).

Here, the Complaint does not plead a general averment that all conditions precedent have occurred.  But, in the Opposition, plaintiff asserts that there is no condition precedent to MCM's performance.  ECF 12-1 at 13.  And, a straightforward interpretation of the terms of the Change Order plainly supports ARCO's position.  ECF 9 at 7 ("As part of this Scope of Work, MCM will secure a letter of approval from TPA acknowledging that the landfill clean up work is complete. Upon receipt of this letter of approval, ARCO will release payment for the landfill clean up.").  To the extent that MCM argues to the contrary, such an allegation cannot be considered by the Court at this time.

In sum, Rule 9(c) has no bearing on the viability of the Complaint.  ARCO adequately states a breach of contract claim.

### D.  Remaining Claims

Defendant advances two additional reasons to dismiss the Complaint. Neither is persuasive.

### 1.  Breach of Subcontract

MCM argues that, to the extent ARCO contends that MCM's failure to perform was a breach of the Subcontract, the claim must fail because the Settlement Agreement acknowledges that the Subcontract was fully performed.  ECF 10-1 at 8-9.

According to MCM, ARCO acknowledged in the Settlement Agreement that MCM performed all of its work under the Subcontract.  *Id.* at 8.  It points to the "Subcontractor Final Payment Affidavit, Release, and Waiver of Liens," dated May 9, 2017, stating that, with the exception of the work described in the Change Order, MCM performed all of its work.  *Id.*; *see* ECF 9 at 14.

In its Opposition, ARCO "concedes" that the Subcontract is no longer the operative agreement.  ECF 12-1 at 13.  It explains that "the Settlement Agreement subsum[ed] the Subcontract."  *Id.*  Therefore, plaintiff contends that it relies on the terms of the Settlement Agreement.  *Id.*  And, it alleges adequately that MCM's failure to perform in accordance with the Settlement Agreement resulted in a material breach of it.  *Id.*

## 2.  Arbitration Clause

Defendant argues that the Complaint should be dismissed because the underlying Subcontract included an arbitration clause.  ECF 10-1 at 7 n.1, 10; *see also* ECF 1-1 at 5.  This claim does not pass muster.

As explained above, the parties agree that the Settlement Agreement is the operative contract.  ECF 10-1 at 8; ECF 12-1 at 13.  It is silent as to arbitration.  Moreover, it states that the Agreement "represents the entire settlement agreement among the Parties relating to the subject matter . . . ."  ECF 9 at 3, ¶ 7.  And, it specifies that "[a]ny action brought to enforce this Agreement shall be brought in the appropriate court in Baltimore City, Maryland."  *Id.* at 4, ¶ 14.  Accordingly, notwithstanding any prior agreement to the contrary, the terms of the Settlement Agreement control.  Thus, the Subcontract's arbitration clause has no bearing here.

## E.  Rule 11

In the Motion, defendant suggests that ARCO has violated Fed. R. Civ. P. 11, because it "knew or reasonably should have known of [the] fatal flaws in its claim and pleading and chose to file the case anyway."  ECF 10-1 at 10.  In its Opposition, ARCO asserts that it "filed this action

in good faith," and argues that "MCM [sic] has not violated [Rule 11] in making its claim."  ECF

12-1 at 14. [7]

>Fed. R. Civ. P. 11(b) provides, in relevant part:
>
>(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>>(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>>(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Rule 11(c)(2) permits a party to file a motion for sanctions against another party for

violation of Rule 11(b), provided that, before filing the motion with the court, the moving party

must serve it on the opposing party and give the opposing party 21 days to withdraw "the

challenged paper, claim, defense, contention, or denial."

"The primary purpose of Rule 11 is to punish violators and deter parties and their counsel

from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard Cty., Inc.*, 474

F. App'x 947, 950 (4th Cir. 2012).  "[A] complaint containing allegations unsupported by any

information obtained prior to filing, or allegations based on information which minimal factual

inquiry would disprove, will subject the author to [Rule 11] sanctions." *In re Kunstler*, 914 F.2d

505, 516 (4th Cir. 1990).

There is no indication that MCM complied with the Rule's procedural requirements.

Moreover, there is no indication that plaintiff acted in bad faith in filing suit.  To the contrary, the

---

[7] I assume plaintiff meant to say that it did not violate Rule 11, and have interpreted this section of the brief accordingly.

Rule 11 motion appears utterly specious.  To the extent that the Court has had to address it, it is MCM that has imposed on limited judicial resources.

### IV.   Conclusion

For the reasons stated above, the Motion is DENIED.

An Order follows, consistent with this Memorandum Opinion.


Date: September 10, 2021                    _____/s/_____
                                            Ellen L.  Hollander
                                            United States District Judge

43