IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ARCO NATIONAL CONSTRUCTION, LLC f/k/a ARCO NATIONAL CONSTRUCTION COMPANY, INC. | * |
| Plaintiff/Counter-Defendant, | * |
| v. | Case No. 1:20-cv-03783-JRR |
| MCM MANAGEMENT CORP., | * |
| Defendant/Counter-Plaintiff. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff/Counter-Defendant ARCO National Construction, LLC's ("ARCO") Motion for Summary Judgment (ECF No. 44; the "ARCO Motion") and Defendant/Counter-Plaintiff MCM Management Corp.'s ("MCM") Cross Motion for Summary Judgment (ECF No. 45; the "MCM Motion"). The parties' submissions have been reviewed; no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth herein, the ARCO Motion will be granted and the MCM Motion will be denied.

## BACKGROUND

A comprehensive factual background is set forth in the court's memorandum opinion of September 10, 2021, (ECF No. 21), which addressed MCM's Motion to Dismiss at ECF No. 10. Therefore, the court here summarizes the relevant procedural history and salient undisputed facts relevant to its analysis of the instant cross motions.

I.   **Procedural History**

This action arises out of a contract dispute between a general contractor, ARCO, and one of its subcontractors, MCM. At the center of the parties' dispute are two contracts – a subcontract

for work on a construction project and a subsequently executed settlement agreement. On December 30, 2020, ARCO filed its Complaint against MCM. The Complaint sets forth one count for breach of contract. (ECF No. 1.) MCM moved to dismiss ARCO's Complaint, which motion was denied by Judge Hollander by opinion and order issued September 10, 2021. (ECF Nos. 10 and 21.) On October 13, 2021, MCM filed an amended answer and counterclaim against ARCO. MCM's Amended Counterclaim sets forth three counts: breach of contract (Count I); tortious interference with contract (Count II); and tortious interference with prospective economic advantage (Count III). (ECF No. 24; the "Counterclaim.") ARCO asserts it is entitled to judgment because MCM released the claims set forth in its Counterclaim. The MCM Motion reasserts an argument raised in its previously denied motion to dismiss – that ARCO's breach of contract claim is untimely. On this basis, MCM asserts that it is entitled to judgment as a matter of law on ARCO's claim.[1]

## II.   Undisputed Material Facts

On or about August 10, 2015, the parties entered into a subcontract agreement (the "Subcontract") pursuant to which MCM agreed to perform excavation and utility installation services on the FedEx Ground-Sparrows Point project in Baltimore, Maryland (the "Project"). (ECF Nos. 1-1, 44-3 at No. 2.) During the course of the Project, a dispute arose between the parties pertaining to the balance ARCO owed MCM under the Subcontract. (ECF No. 9.) On May 9, 2017, the parties executed a "Settlement Agreement" resolving the disputes regarding the Project.[2] *Id.*; ECF No. 44-3 at Resp. No. 1. Paragraph 3 of the Settlement Agreement details the parties' obligations:

---

[1] The MCM Motion seeks summary judgment in its favor per Rule 56, but also requests that the court "dismiss ARCO's lawsuit with prejudice." (ECF No. 45 at 2.) The court construes the MCM Motion as a Rule 56 motion.
[2] "MCM and ARCO have now agreed to settle their dispute in connection with the Project, the Subcontract and the Lawsuits." (ECF No. 9, ¶ H.)

2. **<u>Changes to Subcontract Sum & Scope of Work:</u>**

   a. Previously unsigned Change Order Numbers 25 and 26 shall be deemed revoked and of no further force or effect ("Prior Unsigned Change Orders"); and

   b. ARCO and MCM shall execute Change Order #25-S, the form of which is attached hereto as <u>Exhibit A</u> and Incorporated herein by this reference ("CO #25-S"), which provides for an adjustment of the aggregate Subcontract Sum to $10,105,908.23, and adds work to the Subcontract Scope of Work to be performed by MCM as set forth in CO #25-S.

3. **<u>Payments to MCM & Its Lower Tiers:</u>**

   a. Upon full execution of this Settlement Agreement, the Parties shall comply with the following obligations and deliver the checks, affidavits, Change Orders and other documents and checks required of the Parties under this Settlement Agreement ("Settlement Documents") to Tracy Steedman, Esq., at Adelberg, Rudow, Dorf & Hendler, LLC, 7 Saint Paul Street, Suite 600, Baltimore, MD 21202 ("Escrow Agent"), who shall hold for the benefit of ARCO and distribute the Settlement Documents in accordance with the terms of this Settlement Agreement.

   b. MCM hereby represents and certifies, under penalty of perjury, that there are no other persons or entities entitled to payment of any amounts in connection with or arising out of MCM's subcontract work, except those Payees and amounts listed in <u>Exhibit B.</u>

   c. **<u>MCM:</u>** MCM shall deliver the following to the Escrow Agent:

      i. CO #25-S executed by MCM;

      ii. Two (2) copies of this Settlement Agreement, executed by MCM;

      iii. Two (2) copies of the [sic] each Dismissal with Prejudice of the Lawsuits,[3] filed with the Court,

---

[3] The Recitals of the Settlement Agreement provide in relevant part:

        inclusive of the Court's date stamp.

      1. The Carter Dismissal Must be Filed before Thursday May 11, 2017; and

      2. The Rinker Dismissal Must be filed before Wednesday May 17, 2017.

      iv. "Subcontractor final Payment Affidavit, Release and Waiver of Liens" executed by all of the subcontractors and suppliers listed on Exhibit B ("Payees"), in the form attached hereto as Exhibit C, and incorporated herein by this reference.

      v. "Subcontractor Final Payment Affidavit, Release and Waiver of Liens" executed by MCM, in the form attached hereto as Exhibit D.

    d. **ARCO:** ARCO shall deliver to the Escrow Agent

      i. Joint Checks made payable to MCM and each of the Payees[4] in the amounts specified on Exhibit B.

Although the parties agree that MCM performed its obligations under the Settlement Agreement, MCM disputes that ARCO performed all of its obligations. (ECF Nos. 44-1 at 2; 45-1 at 5.)

The Settlement Agreement incorporates by reference Change Order #25-S (ECF No. 9 at 7; "CO 25-S") which provided for an adjustment of the "Subcontract Sum" and added to MCM's scope of work under the Subcontract:

---

ARCO and the Project owner and others received Notices of Intent to Lien from Carter Paving & Excavating, Inc. ("Carter"), Belair Road Supply Co., Inc. ("Belair"), Hydro Conduit Corporation, dba Rinker Materials Concrete Pipe Division ("Rinker") and Crouse Construction Co., Inc. ("Crouse") alleging that MCM had not fully paid them for the labor and/or materials provided to the Project.

Carter and Rinker each filed Petitions to Establish and Enforce Mechanic's Lien ("Lawsuits")

(ECF No. 9, ¶¶ E, F.)
[4] Exhibit B to the Settlement Agreement identifies ten construction entities, including MCM, that were "[t]o be paid immediately" specified amounts upon execution of the Settlement Agreement. (ECF No. 9 at 8.)

## ARCO National Construction Company, Inc.

8150 Co11_Jorate Park Drive
Cincinnati, OH 45242
Phone: 513-272-2333   Fax: 513-272-1795

### CHANGE ORDER

| | | | | |
|---|---|---|---|---|
| Subcontractor PM: | Brandon Bonanno | | Email: | bbonanno@mcmdemo.com |
| TO: | MCM Management Corp. | | DATE: | 05/04/2017 |
| | 1430 Sparrows Point Boulevard | | CO# | 25S |
| | Sparrows Point, MD 21219-1014 | | PROJECT: | Scannell FedEx Ground - Baltimore |
| PHONE: | 443-823-9944 | | | 101 Bethlehem Blvd. |
| FAX: | 410-388-9844 | | | Baltimore, MD, 21219 |
| VENDOR# | 55567 | | JOB# | N449- |
| SUBCONTRACT#: | 449-1001 | | REFERENCE: | |

**YOU ARE DIRECTED TO MAKE THE FOLLOWING CHANGES IN THIS SUBCONTRACT:**

| Item# | Phase | Description | Amount |
|---|---|---|---|
| 1 | 02-1100- | Settlement amount payable pmsuant to Settlement Agreement dated May 2017 between Contractor and Subcontractor. | $100,000.00 |
| 2 | 02-1100- | Landfill clean-up - Removal of all visible and/or known rock, brick, concrete, and debris larger than 6". Removal of all wood, railroad ties and other materials that cannot be processed as part of any futme soil remediation. *All* material to be hauled to an MCM controlled location or other mutually agreed to location with TPA. As part ofthis Scope of Work, MCM will secme a letter ofapproval from TPA acknowledging that the landfill clean-up work is complete. Upon receipt of this letter of approval, ARCO will release payment for the landfill clean-up. This work will be completed and accepted in writing by TPA no later than May 26, 2017 (Completion Date). If this landfill clean-up scope is not completed by the Completion Date, or if Contractor has not received written acceptance from TPA of this work by the Completion Date, then the Subcontract Sum will be automatically reduced by $50,000 without further change orders or action by either party. | $50,000.00 |
| | | Total | $150,000.00 |

Not valid until signed by both the Subcontractor and Contractor. Signatme of the Subcontractor indicates the Subcontractor's agreement herewith, including any adjustment in the Subcontract Sum or Time.

| | |
|---|---|
| The original Subcontract Sum was ................................................................................ | $965,715.00 |
| The net change by previously authorized Change Orders was ...................................................... | $8,990,193.23 |
| The Subcontract Sum prior to this Change Order .................................................................. | $9,955,908.23 |
| TheSubcontract Sum will be Increased by this Change Order ........................................................ | $150,000.00 |
| Thenew Subcontract Sum will be ................................................................................ | $10,105,908.23 |

**MCM Management Corp.**            **ARCO National Construction Company, Inc.**

By: _____            By: _____

Date: _ _ _ _ _ _ _ _ _ _            Date: _ _ _ _ _ _ _ _ _ _

ARCO RRPD 007686

*Id.* at 7.[5]  The Settlement Agreement contains the following release:

---

[5] CO 25-S as reproduced in this Opinion is a more legible unexecuted copy from ECF No. 46 at 6. The executed copy of CO 25-S at ECF No. 9 at 7 is identical to the copy reproduced in this opinion.

> Upon release of the Joint Checks, and except for the Parties' obligations pursuant to this Agreement and MCM's right to payment for the Remaining Work, MCM and its respective officers, directors, employees, agents, and representatives do herby release, acquit and forever discharge ARCO, and its respective insurers, attorneys, officers, directors, employees, agents, representatives, and their shareholders, officers, directors, employees, agents, representatives, successors, heirs and assigns from any and all from any and all [sic] claims, charges, actions, causes of action, liabilities or demands of any nature whatsoever in law or equity, known or unknown, contingent or mature, that MCM has, had, or may have arising out of or related to any transactions, occurrences, acts or omissions in any way relating to the Subcontract and the Project.

*Id.* at 3. The Settlement Agreement has a Maryland choice of law provision.[6] (ECF No. 9, ¶ 13.)

## LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). This court has previously explained that a "party cannot create a genuine

---

[6] "The terms and conditions of this Agreement shall be governed by, interpreted, and construed in accordance with the laws of the State of Maryland without regard to principles of conflicts of law." (ECF No. 9, ¶ 13.)

dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Further, the court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs*, 780 F.3d at 569 (explaining that the trial court may not make credibility determinations at summary judgment). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## ANALYSIS

**I.     ARCO Motion**

ARCO asserts that MCM's counterclaims are barred by the Settlement Agreement. (ECF No. 44-1, 6.) MCM counters that its counterclaims are excepted from the release pursuant to Paragraphs 5 and 14 of the Settlement Agreement. (ECF No. 45-1, 6.)

### A.     Contract Interpretation – Settlement and Release Agreements

"Settlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." *Maslow v. Vanguri*, 168 Md. App. 298, 316 (2006). "Releases are contractual, and they are therefore governed by ordinary contract principles." *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 120 Md. App. 538, 548, (1998). "Contracts are interpreted objectively, and '[i]f the language of a contract is unambiguous, we give effect to its plain meaning and do not contemplate what the parties may have subjectively intended by certain terms at the time of formation.'" *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177 (2015) (quoting *Cochran v. Norkunas*, 398 Md. 1, 16 (2007)). "The

interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law. . . ." *Phoenix Servs., L.P. v. Johns Hopkins Hosp.,* 167 Md. App. 327, 391 (2006).

"A release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation." *Shriver v. Carlin & Fulton Co.*, 155 Md. 51, 64 (1928). "Because the nature and scope of a release is defined by, and in accordance with, the intent of the contracting parties as determined from an objective perspective, there is a notable dearth of authority articulating the exact definition of a release." *Kaye v. Wilson-Gaskins*, 227 Md. App 660, 679 (2016). The Maryland Supreme Court has defined a release generally as "[a] giving up or relinquishment as of a right or claim[,] [t]he giving up or abandoning a claim or right to the person against whom the claim exists or the right is to be exercised or enforced[, or a] surrender of a right." *Whitcomb v. National Exch. Bank*, 123 Md. 612, 616 (1914) (internal quotations and citations omitted).

The Restatement (Second) of Contracts defines a release as follows:

> § 284. Release
>
> (1) A release is a writing providing that a duty owed to the maker of the release is discharged immediately or on the occurrence of a condition.
>
> (2) The release takes effect on delivery as stated in §§ 101-03 and, subject to the occurrence of any condition, discharges the duty.

RESTATEMENT (SECOND) OF CONT. § 284 (AM. LAW INST. 1981).

Neither party argues, and the court does not find, that the Settlement Agreement is ambiguous. Therefore, the sole issue before this court with respect to the ARCO Motion is whether the release bars MCM's counterclaims.

B.   **Breach of Contract**

Count I of MCM's Counterclaim is for breach of contract. To prove an action for breach of contract, "a plaintiff must prove 'that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *Harig v. Progress Rail Servs. Corp.*, 166 F. Supp. 3d 542, 550 (D. Md. 2015) (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001)). "[T]he written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." *Slice v. Carozza Props., Inc.*, 215 Md. 357, 368 (1958).

MCM acknowledges that ARCO complied with its Settlement Agreement obligations set forth in Paragraph 3 – Payments to MCM and Its Lower Tiers but argues that because ARCO refused to authorize MCM to perform the work in CO 25-S, ARCO did not satisfy all of its obligations under the Settlement Agreement. (ECF Nos. 24 and 45-1 at 9.) MCM alleges that "as a result of ARCO's breach of the Settlement Agreement, MCM had to redirect material it committed to other projects to fill the pits on the Project, costing MCM several hundred thousands of dollars in sales it otherwise would have made if it had access to the Project site materials pursuant to the terms of the parties' Settlement Agreement prior to its demobilization in December of 2019." *Id.* ¶ 27.

ARCO counters that the obligations under CO 25-S are not Settlement Agreement obligations. (ECF No. 46 at 3.) Rather ARCO asserts that while the Settlement Agreement obligated the parties to execute CO 25-S, the parties' performance or non-performance of CO 25-S does not affect or invoke the parties' respective performance obligations under the Settlement Agreement. *Id.* According to ARCO, the parties' obligations under the Settlement Agreement

9

with respect to CO 25-S were discharged when the change order was fully executed on May 11, 2017. *Id.* at 4.

The court agrees with ARCO. The plain language of the Settlement Agreement obligated the parties to execute CO 25-S. And it is undisputed that the parties did so. It is further undisputed that the parties complied with their mutual obligations under Paragraph 3 of the Settlement Agreement. In order for MCM to prevail on its breach of contract claim, it will need to prove that the Settlement Agreement obligated ARCO to authorize MCM's performance of CO 25-S. But that is not what the Settlement Agreement says.

MCM is correct that the release carves out two exceptions. MCM released all claims except for those related to the parties' obligations under the Settlement Agreement and MCM's "right to payment for the Remaining Work."[7] MCM has not offered any evidence or persuasive argument to support a finding that the Settlement Agreement obligated ARCO to authorize MCM to perform the Remaining Work.

Although MCM's argument is somewhat obscure, MCM appears to argue that because CO 25-S was incorporated by reference in the Settlement Agreement, ARCO's "obligations . . . owed to MCM under Change Order #25-S" are obligations owed to MCM under the Settlement Agreement. (ECF No. 45-1 at 9.) Therefore, according to MCM, ARCO's alleged failure to authorize MCM to perform the Remaining Work was a breach of the Settlement Agreement. There is no reading of the Settlement Agreement that supports MCM's position. Indeed, CO 25-S requires approval from the Project's landlord as a condition precedent for payment but contains no similar language with respect to ARCO. (ECF No. 9 at 7.) Were there an obligation on ARCO's

---

[7] The Remaining Work is defined as the work set forth in CO 25-S. *See* (ECF No. 9 at 14) ("The Undersigned has completed all of its work on the Project, except for the work described in Change Order # 25-S ("Remaining Work") as more particularly described in Exhibit A").

part to authorize MCM to complete the Remaining Work, such obligation would be governed by the Subcontract, as CO 25-S is a modification of the Subcontract.

Paragraph 2 – Changes to Subcontract Sum and Scope of Work of the Settlement Agreement obligates the parties to execute CO 25-S and incorporates by reference the form of the change order that the parties are to execute. Despite the parties' incorporation by reference of CO 25-S, the Subcontract remained in full force and effect. Paragraph 2 states that CO 25-S "provides for an adjustment of the aggregate Subcontract Sum to $10,105,908.23, and adds work to the Subcontract Scope of Work to be performed by MCM as set forth in CO #25-S." (ECF No. 9 at ¶ 2b.)

"Subcontract Sum" and "Scope of Work" are terms defined by the Subcontract. Subcontract Sum is defined under Article 2 – Subcontract Sum and Progress Payments of the Subcontract. Article 2 of the Subcontract not only defines Subcontract Sum, but also includes several other terms and obligations of the parties not set forth in the Settlement Agreement, including ARCO's "Right to Withhold Payment & Other Remedies." (ECF No. 1-1, ¶ 2.6.) Exhibit E – Scope of Work to the Subcontract is a fourteen-page document that not only defines Scope of Work, but includes terms governing "Extra Work," and sets forth "General Requirements" for change order requests. (ECF No. 1-1 at 19-20.) Without the Subcontract Agreement, many defined terms that appear in the Settlement Agreement (including Subcontract Sum and Scope of Work) are rendered meaningless. Nothing in the Settlement Agreement demonstrates that the parties intended the Subcontract to cease to exist upon execution of the Settlement Agreement. The fact that CO 25-S is incorporated by reference in the Settlement Agreement does not create additional obligations of ARCO not set forth in Paragraph 3 of the Settlement Agreement. CO 25-S is a modification that adds terms to the existing Subcontract; the

parties' obligations with respect to CO 25-S are governed by the Subcontract, not the Settlement Agreement. Based on the plain language of the Settlement Agreement, the court finds that the parties did not intend to create an obligation under the Settlement Agreement for ARCO to authorize MCM to perform work on the Project, and any such obligation, if one exists, is governed by the terms of the Subcontract.

Because the court finds the Settlement Agreement does not obligate ARCO to authorize MCM's work on CO 25-S, MCM's breach of contract claim does not fall within the release exception for claims related to "the Parties' obligations pursuant to this Agreement." Additionally, MCM does not demand payment for the Remaining Work as contemplated by the "right to payment for the Remaining Work" exception in the release. Rather, MCM demands consequential damages resulting from ARCO's alleged failure to authorize MCM to complete the Remaining Work, which, according to MCM, caused it to have to demobilize from the Project in 2019 and resulted in the loss of money it could have earned on other projects.[8] Because MCM's breach of contract claim does not fall within either exception contemplated by the Settlement Agreement release, the claim has been released and ARCO is entitled to judgment as a matter of law as to Count I of MCM's Counterclaim.

### C. Tortious Interference with Prospective Business and Tortious Interference with Contract (Counts II and III).

ARCO argues that the release also bars MCM's business tort claims set forth in Counts II and III of the Counterclaim. (ECF No. 44-1 at 6.) MCM counters that its business tort claims fall outside of the scope of the Settlement Agreement release because they do not arise out of the

---

[8] *See* ECF No. 24 ¶ 17 ("In addition to the $50,000 payment, the real value to MCM of the CO Work was its ability to use the materials it was processing as fill for its ESOW or other work on the Project site (the 'ARCO Materials'). By using the ARCO Materials as fill, MCM was able to sell to other contractors the stockpile of materials from other work it was performing on the Project, which MCM valued to be worth in excess of $350,000, addition significant value to MCM from the CO Work.").

Subcontract or Project and were "not contemplated by the parties when they executed the Settlement Agreement." (ECF No. 45-1 at 12.)

MCM alleges:

> On information and belief, another dispute arose between Tradepoint and ARCO regarding the Scannell site when Tradepoint refused to release certain retained funds it withheld from ARCO on the Project, in part because ARCO never performed the work which originated from the Scannell site and never authorized MCM to perform the work it agreed to perform.
>
> In the course of its dispute with Tradepoint, ARCO made materially false statements to Tradepoint, blaming MCM for not performing the work at the Scannell site.
>
> ARCO made materially false statements to Tradepoint that MCM was responsible for clean-up of the landfill, which representations caused Tradepoint to believe MCM refused to complete its work on site and had damaged Tradepoint's property with its actions and inactions.
>
> ARCO knew that its statements to Tradepoint were false when they were made because CO #25-S expressly provided that if Tradepoint did not accept MCM's performance, there would be no further change order or action by either MCM or ARCO; it was ARCO that prevented MCM from performing according to the terms of CO #25-S; and that MCM did not damage any property nor where they negligent
>
> ARCO's false statements caused Tradepoint to withhold retained funds owed to MCM under the Tradepoint Contract and contributed to Tradepoint requesting MCM demobilize from the Project prior to the completion of the Tradepoint Contract.
>
> ***
>
> ARCO's false statements to Tradepoint instigated, at least in part, Tradepoint's refusal to allow MCM to complete its scope of work on the Project. ARCO deliberately made false statements regarding MCM to Tradepoint and intentionally interfered with the Tradepoint Contract.
>
> ***

13

> ARCO intentionally interfered with MCM's business relationship with Tradepoint by knowingly and intentionally making false statements about MCM to Tradepoint.
>
> ARCO's interference described herein was improper.
>
> ARCO's false statements and intentional interference caused Tradepoint to breach and/or terminate its relationship with MCM.

(ECF No. 24 ¶¶ 28-32, 49, and 54-56.)

Based on MCM's allegations, the court finds that the alleged false statements and interference relate to the Project. Indeed, the allegations describe the Project location and work that was to be completed by MCM on the Project. Therefore, the business tort claims are barred by the release because they are "related to" a "transaction," "occurrence," "act or omission" that is related to "the Subcontract and the Project." ECF No. 9 ¶ 5. *See B & P Enterprises v. Overland Equip. Co.,* 133 Md. App. 583, 616 (2000) (stating "[a]s we observed, contractual terms are to be given their ordinary meaning.") (citing *Auction & Estate Representatives, Inc., v. Ashton*, 354 Md. 333, 343 (1999); *ST Systems v. Maryland Nat'l Bank*, 112 Md. App. 20, 34 (1996)). Accordingly, ARCO is entitled to judgment as a matter of law on Counts II and III of the Counterclaim.

**II. THE MCM MOTION**

MCM reasserts its argument raised in its Motion to Dismiss that ARCO's breach of contract claim is untimely. This court addressed MCM's statute of limitations argument in its Opinion addressing MCM's Motion to Dismiss. (*See* ECF No. 21, Section B.) MCM raises no new basis to support this argument; therefore, the court declines to revisit its previous ruling. Accordingly, the MCM Motion will be denied.

## CONCLUSION

For the reasons set forth herein, by accompanying order, the ARCO Motion will be granted; and the MCM Motion will be denied. Accordingly, judgment shall be entered in favor of Counter-Defendant ARCO and against Counter-Plaintiff MCM on MCM's Amended Counterclaim at ECF No. 24; this action shall proceed on ARCO's Complaint at ECF No. 1.


July 11, 2023                                                                     /S/
                                                                        _____
                                                                        Julie R. Rubin
                                                                        United States District Judge