IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARCO NATIONAL CONSTRUCTION,
LLC, f/k/a ARCO NATIONAL
CONSTRUCTION COMPANY, INC.,

     *Plaintiff*,

       Civil No.: 1:20-cv-03783-JRR

     v.

MCM MANAGEMENT CORP.,

     *Defendant.*

## MEMORANDUM OPINION

Plaintiff ARCO National Construction, LLC f/k/a ARCO National Construction Company, Inc. ("ARCO") initiated this breach of contract action against Defendant MCM Management Corp. ("MCM"). (ECF No. 1; the "Complaint"). Pending now before the court is MCM's Motion to Compel Arbitration (ECF No. 57; the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND

This action arises out of a contract dispute between a general contractor, ARCO, and one of its subcontractors, MCM. The court incorporates the extensive background set forth in its memorandum opinion on the parties' cross motions for summary judgment. (ECF No. 48 at p. 1–6.) At the center of the parties' dispute are two contracts—a subcontract for work on a construction project and a subsequently executed settlement agreement.

On or about August 10, 2015, the parties entered into a subcontract agreement (the "Subcontract") pursuant to which MCM agreed to perform excavation and utility installation

services on the FedEx Ground-Sparrows Point project in Baltimore, Maryland (the "Project"). (ECF Nos. 1-1.)     The Subcontract contains an arbitration provision that provides: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be finally resolved by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules . . . ."  (ECF No. 1-1 ¶ 4.9; the "Arbitration Provision").

During the course of the Project, a dispute arose between the parties pertaining to the balance ARCO owed MCM under the Subcontract.  (ECF No. 9.)  On May 9, 2017, the parties executed a "Settlement Agreement" resolving the disputes regarding the Project. [1]  *Id.*   The Settlement Agreement incorporates by reference Change Order #25-S ("CO 25-S") (ECF No. 9 ¶ 2 and at p. 7), which provided for an adjustment of the "Subcontract Sum" and added to MCM's "Scope of Work" under the Subcontract.  *Id.*

## A.  The Michigan Litigation

Prior to ARCO's institution of the present action, MCM filed a complaint against ARCO in the Circuit Court for Wayne County, Michigan (Case No. 20-009960-CB) on August 5, 2020 (the "Michigan Litigation").  (ECF No. 58-1; "Michigan Litigation Compl.")  MCM advanced three claims in the Michigan Litigation—tortious interference with contract, tortious interference with prospective economic advantage, and for declaratory relief.  *Id.*  The tortious interference claims both arose from ARCO's interference in MCM's contract and relationship with another entity.  *Id.*  The declaratory relief claim sought declaratory judgment related to MCM's obligations under CO 25-S, specifically that it was not required to perform where there was a dispute of whether "ARCO prevented and refused to allow MCM to perform under [CO 25-S]," and thus

---

[1] "MCM and ARCO have now agreed to settle their dispute in connection with the Project, the Subcontract and the Lawsuits."  (ECF No. 9 ¶ H.)

relieving MCM's duty of performance. *Id.* ¶¶ 48–50. In the Michigan Litigation Complaint, MCM

also asserted, *inter alia*, the following allegations:

> 8. MCM and Arco entered into a Subcontract Agreement dated August 10, 2015, and subsequent Change Orders numbered 1-25 (collectively, the "Subcontract"), wherein MCM agreed to provide excavation and utility installation services for the construction of a sorting facility on property located in Baltimore, MD, commonly known as "Sparrow's Point" (the "Project") . . . .
>
> 13. On May 14, 2017, MCM and Arco executed Change Order #/25-S ("CO #25-S") in connection with certain landfill clean-up work to be performed on the Project, specifically at the Scannell FedEx Ground site ("Scannell Site").
>
> 14. Under the terms of CO #25-S, if MCM completed the removal of certain materials at the Scannell site, MCM would receive a $50,000.00 increase to its payment under the Subcontract.
>
> 15, Pursuant to CO #25-S, if the MCM did not complete the work at the Scannell site by a date certain and/or the Owner did not accept MCM's performance, MCM and Arco agreed that MCM would not be entitled to the $50,000.00 increase to MCM's payment under the Subcontract and there would be "...no further change order or action by either party," and MCM and Arco would go their separate ways . . . .
>
> 17. An issue arose between Arco and the Owner, which had no bearing on MCM's ability to perform the work at the Scannell site.
>
> 18. The work to be performed by MCM at the Scannell site was within Arco's scope of work in its contract with the Owner, and Arco demanded that the Owner provide Arco a release for the work to be performed by MCM.
>
> 19. Because of its issue with the Owner, Arco refused to allow MCM to perform the work at the Scannell site . . . .
>
> 23. On information and belief, another dispute arose between the Owner and Arco regarding the Scannell site when the Owner refused to release certain retained funds it withheld from Arco on the Project, in part because Arco never performed the work at the Scannell site and never authorized MCM to perform the work it agreed to perform.

24. Arco made materially false statements to the Owner, blaming MCM for not performing the work at the Scannell site.

25. Arco knew that its statements to the Owner were false when they were made because CO #25-S expressly provided that if the Owner did not accept MCM's performance, there would be no further change order or action by either MCM or Arco, and it was Arco that prevented MCM from performing according to the terms of CO #25-S.

26. Arco's false statements caused the Owner to withhold retained funds owed to MCM under the Owner Contract, in addition to withholding funds owed to Arco for the Project.

(Michigan Litigation Compl., ECF No. 58-1 ¶¶ 8, 13–15, 17–19, 23–26.)

"Subcontract Sum" and "Scope of Work" are terms defined by the Subcontract. Subcontract Sum is defined under Article 2, Subcontract Sum and Progress Payments of the Subcontract. Article 2 of the Subcontract defines Subcontract Sum, and sets out other obligations of the parties not contained in the Settlement Agreement, including ARCO's "Right to Withhold Payment & Other Remedies." (ECF No. 1-1 ¶ 2.6.)

## B. The Present Action

ARCO initiated this action against MCM on December 30, 2020, asserting one breach of contract claim based on allegations related to the Subcontract and Settlement Agreement. (ECF No. 1.) MCM moved to dismiss the Complaint, offering substantive arguments about the amount in controversy, the statute of limitations, the Subcontract being subsumed by the Settlement Agreement, and failure to state a claim. (ECF No. 10-1.) MCM also asserted that "[t]he Subcontract contains an arbitration clause, which is yet another reason this Court should dismiss Plaintiff's claims as they relate to the Subcontract," and that ARCO's Complaint was facially deficient because, *inter alia*, ARCO "ignored the [A]rbitration [P]rovision in the Subcontract." *Id.*

at p. 9 n.1, 12.  In response to MCM, ARCO "concede[d]" that the Settlement Agreement

subsumed the Subcontract.  (ECF No. 12-1 at p. 13.)

Thereafter, Judge Hollander (then presiding) issued a decision, denying the motion and

noting:

> In its Opposition, ARCO "concedes" that the Subcontract is no
> longer the operative agreement.  It explains that "the Settlement
> Agreement subsum[ed] the Subcontract."   Therefore, plaintiff
> contends that it relies on the terms of the Settlement Agreement.
> And, it alleges adequately that MCM's failure to perform in
> accordance with the Settlement Agreement resulted in a material
> breach of it. . .
>
> Defendant argues that the Complaint should be dismissed because
> the underlying Subcontract included an arbitration clause.  This
> claim does not pass muster. As explained above, the parties agree
> that the Settlement Agreement is the operative contract.  It is silent
> as to arbitration.  Moreover, it states that the Agreement "represents
> the entire settlement agreement among the Parties relating to the
> subject matter . . . ."   And, it specifies that "[a]ny action brought to
> enforce this Agreement shall be brought in the appropriate court in
> Baltimore City, Maryland."  Accordingly, notwithstanding any prior
> agreement to the contrary, the terms of the Settlement Agreement
> control. Thus, the Subcontract's arbitration clause has no bearing
> here.

(ECF No. 20 at p. 40–41) (record citations omitted).

MCM subsequently filed its answer and a counterclaim against ARCO, asserting claims of

breach of contract, tortious interference with contract, and tortious interference with prospective

economic advantage.  (ECF No. 24.)  ARCO and MCM then filed cross motions for summary

judgment; the court granted ARCO's motion and denied MCM's motion.  (ECF No. 48.)  In

ARCO's opposition to MCM's motion (and reply in support of its own), contrary to its position at

the motion to dismiss stage, it took the position that the Settlement Agreement did not "subsume"

the Subcontract.  (ECF No. 46 at p. 2–3.)  For its part, MCM noted in its reply that it had

"significantly relied on ARCO's concession and the Court's subsequent Opinion in the way it

litigated the matter . . ."   (ECF No. 47 at p. 4.)   It also noted that ARCO's former position

prevented MCM from relying on the Subcontract's Arbitration Provision.  *Id.*

Ultimately, in ruling on the cross motions for summary judgment, this court concluded:

> MCM alleges that "as a result of ARCO's breach of the Settlement Agreement, MCM had to redirect material it committed to other projects to fill the pits on the Project, costing MCM several hundred thousands of dollars in sales it otherwise would have made if it had access to the Project site materials pursuant to the terms of the parties' Settlement Agreement prior to its demobilization in December of 2019."

> ARCO counters that the obligations under CO 25-S are not Settlement Agreement obligations.  Rather ARCO asserts that while the Settlement Agreement obligated the parties to execute CO 25-S, the parties' performance or non-performance of CO 25-S does not affect or invoke the parties' respective performance obligations under the Settlement Agreement.  According to ARCO, the parties' obligations under the Settlement Agreement with respect to CO 25-S were discharged when the change order was fully executed on May 11, 2017.

> The court agrees with ARCO. The plain language of the Settlement Agreement obligated the parties to execute CO 25-S. And it is undisputed that the parties did so . . . .

> Although MCM's argument is somewhat obscure, MCM appears to argue that because CO 25-S was incorporated by reference in the Settlement Agreement, ARCO's "obligations . . . owed to MCM under Change Order #25-S" are obligations owed to MCM under the Settlement Agreement.  Therefore, according to MCM, ARCO's alleged failure to authorize MCM to perform the Remaining Work was a breach of the Settlement Agreement.  There is no reading of the Settlement Agreement that supports MCM's position.  Indeed, CO 25-S requires approval from the Project's landlord as a condition precedent for payment but contains no similar language with respect to ARCO.  Were there an obligation on ARCO's part to authorize MCM to complete the Remaining Work, such obligation would be governed by the Subcontract, as CO 25-S is a modification of the Subcontract.

> Paragraph 2 – Changes to Subcontract Sum and Scope of Work of the Settlement Agreement obligates the parties to execute CO 25-S and incorporates by reference the form of the change order that the

parties are to execute.  Despite the parties' incorporation by reference of CO 25-S, the Subcontract remained in full force and effect.  Paragraph 2 states that CO 25-S "provides for an adjustment of the aggregate Subcontract Sum to $10,105,908.23, and adds work to the Subcontract Scope of Work to be performed by MCM as set forth in CO #25-S."

"Subcontract Sum" and "Scope of Work" are terms defined by the Subcontract.  Subcontract Sum is defined under Article 2 – Subcontract Sum and Progress Payments of the Subcontract. Article 2 of the Subcontract not only defines Subcontract Sum, but also includes several other terms and obligations of the parties not set forth in the Settlement Agreement, including ARCO's "Right to Withhold Payment & Other Remedies."  Exhibit E – Scope of Work to the Subcontract is a fourteen-page document that not only defines Scope of Work, but includes terms governing "Extra Work," and sets forth "General Requirements" for change order requests. Without the Subcontract Agreement, many defined terms that appear in the Settlement Agreement (including Subcontract Sum and Scope of Work) are rendered meaningless. Nothing in the Settlement Agreement demonstrates that the parties intended the Subcontract to cease to exist upon execution of the Settlement Agreement.  The fact that CO 25-S is incorporated by reference in the Settlement Agreement does not create additional obligations of ARCO not set forth in Paragraph 3 of the Settlement Agreement.

(ECF No. 48 at p. 9–12) (record citations omitted).

Thus, the court concluded, "CO 25-S is a modification that adds terms to the existing Subcontract; the parties' obligations with respect to CO 25-S are governed by the Subcontract, not the Settlement Agreement."  *Id.* at p. 12. The court then denied MCM's motion for summary judgment and granted ARCO's motion for summary judgment, entering judgment in favor of ARCO on MCM's counterclaims.  (ECF No. 49.)  The action proceeded as to ARCO's breach of contract claim.  About six months after the court's ruling, and a week after a settlement conference, MCM filed the present Motion.

## II.   LEGAL STANDARD

### A.  Motion to Compel Arbitration

"Arbitration is a matter of contract.  The Federal Arbitration Act (FAA) . . . provides that arbitration contracts are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020) (quoting 9 U.S.C. § 2).  Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4 [9 USCS §§ 401 *et seq.*].

9 U.S.C. § 2.

Sections 3 and 4 of the FAA "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  Additionally, Section 4 of the FAA "reserves for trial the question of whether an arbitration agreement has been made, provided that a question of fact as to that issue is properly generated."  *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548 (D. Md. 2019); *see* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").  Accordingly, "when parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms."  *Murray v. UFCW Int'l, Local 400*, 289

8

F.3d 297, 301 (4th Cir. 2002) (citing 9 U.S.C. §§ 3, 4). "Notwithstanding the terms of 9 U.S.C. § 3, some courts have ruled that, in lieu of a stay, 'dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.'" *Stone*, 361 F. Supp. 3d at 547 (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001)).

"[A] litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction . . . to interstate or foreign commerce, and (4) the failure . . . of the [opposing party] to arbitrate the dispute.'" *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 346–47 (D. Md. 2015) (citation omitted); *see Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) (citing *Moses H. Cone,* 460 U.S. at 25–26 & n. 34) (same). "The FAA reserves for trial the question of whether an arbitration agreement has been made, provided that a question of fact as to that issue is properly generated." *Stone*, 361 F. Supp. 3d at 548 (citing 9 U.S.C. § 4). "In order to generate an issue for resolution by a factfinder, the party opposing arbitration must make 'an unequivocal denial that the agreement [to arbitrate] had been made,' and must produce 'some evidence . . . to substantiate the denial.'" *Id.* (quoting *Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 352 n.3 (4th Cir. 2001)).

While "a defendant who seeks to compel arbitration under the Federal Arbitration Act bears the burden of establishing the existence of a binding contract to arbitrate the dispute," *see Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017), "[t]he 'party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 347 (D. Md. 2015) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

### III.   ANALYSIS

MCM now moves the court to compel arbitration proceedings in this matter.  (ECF No. 57.)  MCM argues that, in view of the court's ruling on summary judgment that the Subcontract is the operative agreement governing the disputes of this action, the dispute at issue is subject to the binding Arbitration Provision.  (ECF No. 57-1 at p. 6–9.)  ARCO does not disagree that this dispute is subject to the binding Arbitration Provision; rather, ARCO argues that MCM has, in essence, waived its right to compel arbitration, specifically by initiating the Michigan Litigation, filing a counterclaim in this action, failing to include an arbitration affirmative defense in its answer, and failing to move to compel arbitration in a timely manner.  (ECF No. 58 at p. 2–12.)

### A.  The FAA and Waiver

"[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 270 (1995).  "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001).  However, the federal policy "'favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Moses H. Cone*, 460 U.S. at 24).  "'Th[e] policy,' we have explained, 'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" *Id.* (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)).  "The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

"Because the right to arbitrate is a matter of contract, it is possible for parties to waive that right." *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 448 (1982). "Waiver . . . 'is the intentional relinquishment or abandonment of a known right.'" *Morgan*, 596 U.S. at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "In Maryland, it is well-settled that waiver is 'the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.'"[2] *Cain v. Midland Funding, LLC*, 452 Md. 141, 161 (2017) (quoting *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122–23 (2011)). "[W]hether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case." *Frank*, 294 Md. at 449 (quoting *Chertkof v. Southland Corp.*, 280 Md. 1, 5–6 (1977). "If waived, the right to compel arbitration is 'regarded as having been voluntarily relinquished and thus treated as though it had never existed.'" *Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376, 393 (2019) (quoting *Stauffer Construction Co. v. Board of Education of Montgomery County*, 54 Md. App. 658, 668 (1983)).

In Maryland, "there is no 'bright-line' test for making waiver determinations." *Id.* at 398 (quoting *Commonwealth Equity Servs., Inc. v. Messick*, 152 Md. App. 381, 394 (2003)). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right . . . ." *Morgan*, 596 U.S. at 417. In view of *Morgan*, this court has explained that "to waive the right to arbitration, Defendants must (1) know of an existing right to arbitration; and (2) act

---

[2] "[C]ourts 'apply the ordinary state-law principles that govern the formation of contracts' in reviewing a challenge to a party's failure to arbitrate." *Naimoli v. Pro-Football, Inc.*, 692 F. Supp. 3d 499, 507 (D. Md. 2023) (quoting *Berkeley Cnty. Sch. Dist. v. Huh Int'l Ltd.*, 944 F.3d 225, 236 (4th Cir. 2019)). "Maryland has recognized the common law doctrine of *lex loci contractus*," meaning that courts applying the law of the jurisdiction where the contract was made—here, Maryland—"when determining the construction, validity, enforceability, or interpretation . . ." *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015).

inconsistently with that right." *Holloman v. Consumer Portfolio Servs., Inc.*, No. CV RDB-23-134, 2023 WL 4027036, at *9 (D. Md. June 15, 2023) (citing *Morgan*, 596 U.S. at 419). An analysis of whether a party has "intentionally and unequivocally waived" its right to seek arbitration is dependent on the facts of each particular case. *Gannett Fleming*, 243 Md. App. at 398 (quoting *BarGale Indus. Inc. v. Robert Realty Co.*, 275 Md. 638, 643–44 (1975)).

"Under Maryland law, the waiver of the contractual right to arbitrate 'may result from an express agreement or be inferred from circumstances.'" *Cain*, 452 Md. at 154 (quoting *BarGale Indus.*, 275 Md. at 643). "To waive the right to arbitrate without express agreement, a party must take action 'inconsistent with an intention to insist upon enforcing' the arbitration clause." *Id.* (quoting *BarGale Indus. Inc.*, 275 Md. at 643). Notably, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

### 1. Waiver through the Michigan Litigation

ARCO first contends MCM waived its right to arbitrate this dispute when it instituted the Michigan Litigation because its claims "arose out of and were related to the Subcontract." (ECF No. 58 at p. 3.) "It is well settled . . . that a party who litigates an issue otherwise subject to arbitration waives the right to arbitration of that issue." *Commonwealth Equity Servs., Inc. v. Messick*, 152 Md. App. 381, 394 (2003) (citing *Frank*, 294 Md. at 137). While participating as a party in a separate judicial proceeding may constitute "a waiver of the right to arbitrate issues raised and/or decided in that proceeding," that waiver does not "extend to 'other unrelated issues arising under the contract.'" *Cain*, 452 Md. at 155 (citing *Frank*, 294 Md. at 459–50). "To determine whether Defendants acted inconsistently with their right to arbitrate the instant action,

this Court considers: (1) whether a right to arbitrate the claims that were litigated in," here, the

Michigan state court, existed; and "(2) whether the claims sought to be compelled to arbitration in

this case are 'related' to the claims litigated in state court." *Holloman*, 2023 WL 4027036, at *9

(citing *Cain*, 452 Md. at 815–17).

In *Frank*, the Supreme Court of Maryland explained:

> In our view, even when participation in a judicial proceeding
> involving arbitrable issues arising under a contract constitutes a
> waiver of the right to arbitrate those issues raised and/or decided in
> the judicial proceeding, such conduct is not necessarily inconsistent
> with an intention to enforce the right to arbitrate unrelated issues
> arising under the same contract.  Such conduct, in and of itself, is
> too equivocal to support an inference of an intentional
> relinquishment of the right to arbitrate issues other than those raised
> and/or decided in the judicial proceeding.  We are persuaded that
> when a party waives the right to arbitrate an issue by participation
> in a judicial proceeding, the waiver is limited to those issues raised
> and/or decided in the judicial proceeding and, absent additional
> evidence of intent, the waiver does not extend to any unrelated
> issues arising under the contract.

*Frank*, 294 Md. at 454.  Further:

> "[W]aiver does not extend to any unrelated issues arising under the
> contract" and suggested that it only extends to other disputes when
> "all of the parts of the dispute [are] deemed to be interrelated."  We
> emphasized that claims are related when "*[t]he claim is in actuality
> part of one basic issue*."

*Cain*, 452 Md. at 158 (emphasis in original) (quoting *Frank*, 294 Md. at 453–54).

The *Frank* court concluded that, though the two cases involved the same contract, they

raised "two completely separate issues—a contractor's failure to pay a subcontractor for rock

removal and an owner's failure to pay the contractor the balance due on the construction project,"

and thus "[n]either suit was dependent on the other." *Id.* at 158–59 (citing *Frank*, 294 Md. at 453).

The Fourth Circuit in *MicroStrategy, Inc. v. Lauricia* similarly concluded that a finding of waiver

was not supported where the claims in previous actions were distinct—one related to the disclosure

13

of trade secrets or other confidential information, and the other to discrimination.  268 F.3d 244, 250 (4th Cir. 2001).  Conversely, in *Cain*, the Supreme Court of Maryland held that the party had indeed waived its right to arbitrate when it filed and pursued a separate claim and "the claims [were] part of 'one basic issue' of whether [the defendant] was entitled" to judgment.  452 Md. at 158–59.

The court is not persuaded that MCM waived its right to arbitrate the disputes brought in this action based on its initiation of the Michigan Litigation.  Here, while the allegations at issue in the Michigan Litigation certainly relate to the relationship between the parties, the claims are not all "part of one basic issue" raised pursuant to ARCO's breach of contract claim under the Subcontract.  This is especially clear as to the tortious interference claims.  *Id.* at 158 (quoting *Frank*, 294 Md. at 453) (explaining that the court may find waiver through pursuit of other litigation where "all of the parts of the dispute [are] deemed to be interrelated," meaning when the claims are, "in actuality[,] part of one basic issue") (emphasis omitted).[3]

Even as to the claim for declaratory relief, that the fact that this court previously concluded that "CO 25-S is a modification that adds terms to the existing Subcontract" does not militate in favor of finding that MCM intentionally acted inconsistent to its right to arbitrate under the Subcontract's Arbitration Provision.  *See* ECF No. 48 at p. 9–12; and *Cain*, 452 Md. at 154*, supra*.  In the Michigan Litigation, MCM expressly invoked CO 25-S, not the Subcontract, in its declaratory relief claim, describing the Michigan Litigation as "a case of actual controversy between the parties as to their respective obligations under [CO 25-S] . . ."  (Michigan Litigation Compl., ECF No. 58-1 ¶ 48.)  This does not reflect MCM's intention or understanding that a

---

[3] ARCO's argument for waiver based on MCM's Michigan Litigation "closely mirror[ing]" its counterclaim in the present litigation is not compelling because its counterclaim was filed after Judge Hollander's ruling on dismissal. (ECF No. 58 at p. 4.) *See infra* Section III.A.2.

dispute arising out of CO 25-S was subject to the Arbitration Provision; this court's conclusion years later has no bearing on that.

In view of the FAA's policy that any doubt as to waiver be resolved in favor of arbitration, the court is not persuaded that MCM's initiation of the Michigan Litigation was an intentional, unequivocal waiver of its right to arbitrate ARCO's present breach of contract claim. *See Moses H. Cone*, 460 U.S. at 24–25, and *Garnett Fleming, Inc.*, 243 Md. App. at 398, *supra*.

### 2. *Waiver through the Present Litigation*

ARCO also argues that MCM waived its right to compel arbitration through its substantial utilization of "the litigation machinery," including filing an answer and counterclaim,[4] engaging in discovery and summary judgment motions practice, and participating in the settlement conference. (ECF No. at p. 7–14.)

To be sure, "[f]ailing to timely make a demand for arbitration is one way to waive the right." *Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376, 393 (2019) (citing *Stauffer Construction Co. v. Board of Education of Montgomery County*, 54 Md. App. 658, 666 (1983)). The Appellate Court of Maryland has explained:

> Maryland appellate decisions have identified two ways in which a court may find a right to arbitration is waived for "inappropriate delay" in asserting the right. First, a party may fail to make a demand for arbitration within the time limits spelled out in the text of the agreement itself. . . .
>
> Second, even when the arbitration agreement sets no demand deadlines, a right to arbitration may be waived if the party waits too long to assert the right to arbitration and instead "engage[s] itself substantially in the judicial forum." *The Redemptorists*, 145 Md. App. at 141, 801 A.2d 1104. Because "a resort to litigation is inconsistent with an intent to arbitrate, . . . one who litigates an issue that otherwise would be subject to arbitration waives his right

---

[4] ARCO's position that MCM failed to preserve its defense of arbitration by failing to assert it as a defense in its answer is not compelling where ARCO itself acknowledges that MCM included a defense that this court lacks subject matter jurisdiction.

subsequently to arbitrate that issue." *Stauffer Construction*, 54 Md. App. at 667, 460 A.2d 609.  The question in these cases is essentially how long a defendant may let litigation go on before attempting to shove the dispute out of the judicial forum.

For example, in *RTKL Assocs. v. Four Villages Ltd. P'ship*, 95 Md. App. 135, 620 A.2d 351 (1993), this Court affirmed the trial court's determination that an architect and a contractor waived their right to arbitrate a dispute because they waited almost five years after claims were brought against them before seeking to compel arbitration. In the interim, they took advantage of discovery and other litigation vehicles unavailable in arbitration. Similarly, in *Commonwealth Equity Services v. Messick*, 152 Md. App. 381, 400, 831 A.2d 1144 (2003), we affirmed a trial court's ruling that the defendant investment broker waived its right to arbitrate a dispute by waiting fifteen months after the lawsuit began before seeking to compel arbitration. The broker was engaged in discovery and motions practice in the meantime. By contrast, in *The Redemptorists*, 145 Md. App. at 143, 801 A.2d 1104, we held that a cemetery-services provider's demand for arbitration, made six months after the lawsuit began, was not untimely. We held the delay was "understandable under the circumstances." *Id.* at 142, 801 A.2d 1104. Most of the six-month period was spent clarifying the complaint's scope, to be sure the claims were covered by the arbitration provision at issue. This was "not inconsistent with enforcing the right to arbitrate once the full scope of the claims became known." *Id.* at 141–42, 801 A.2d 1104.

*Id.* at 394–95.  *See Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135, 141 (4th Cir. 2018) (affirming a district court's denial of a motion to compel arbitration on the basis of waiver where the party seeking to compel arbitration "employed judicial proceedings to pursue a litigation strategy for over three years," including filing multiple motions for summary judgment and serving discovery).[5]

---

[5] Plaintiff's opposition references the standard articulated in 2018 by the Fourth Circuit that "[a] litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Degidio v. Crazy Horse Saloon & Restaurant Inc.,* 880 F.3d 135, 140 (4th Cir. 2018) (citation omitted).  Plaintiff omits to mention the Supreme Court's subsequent decision in *Morgan v. Sundance, Inc.,* holding that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA."  596 U.S. 411, 419 (2022).

Indeed, "[c]ourts consider a number of factors when analyzing possible waivers, all focused on the extent and purpose of a party's participation in litigation," including, *inter alia*, "[p]articipation in 'extensive' discovery," and utilization of "discovery devices that would not have been available in arbitration." *Deutsch v. G&D Furniture Holdings, Inc.*, No. 501, Sept. term, 2016, 2017 WL 3699339, at *6 (Md. Ct. Spec. App. Aug. 28, 2017) (quoting *Abramson v. Wildman*, 184 Md. App. 189, 200–201 (2009)). "Nevertheless, if there is a legitimate reason for participating in litigation, it will not be deemed a waiver." *Abramson*, 184 Md. App. at 201; *Cf. Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376, 398 (2019) (remarking that "no Maryland court has found a party to have waived a right to arbitration due *solely* to delay; by itself, delay in demanding arbitration is not an 'intentional relinquishment' of the right to arbitrate claims") (emphasis in original) (quoting *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 141 (2002)).

ARCO's briefing makes scarce mention of the fact that MCM engaged in its litigation efforts in this case following the court's denial of its motion to dismiss, which was premised in part on the presence of the Arbitration Provision. (ECF No. 10-1 at p. 9 n.1, 12.) The court concluded that the Subcontract's Arbitration Provision had "no bearing" in this litigation because the Settlement Agreement was the operative complaint—a conclusion reached, at least in part, based on ARCO's concession. (ECF No. 20 at p. 40–41) ("Defendant argues that the Complaint should be dismissed because the underlying Subcontract included an arbitration clause. This claim does not pass muster. As explained above, the parties agree that the Settlement Agreement is the operative contract. It is silent as to arbitration."). Thereafter, MCM engaged in the present litigation as any party would. To find that MCM waived its right by participating in this litigation would effectively penalize MCM for defending this action against it in accordance with this court's

17

order (and per the Federal Rules of Civil Procedure). This background presents a "legitimate reason" for MCM's participation in litigation. *See Abramson*, 184 Md. App. at 201, *supra*.[6]

The court appreciates that both parties have engaged in extensive litigation efforts to date. That notwithstanding, those efforts, individually and in totality, do not persuade the court that MCM waived its right to arbitrate this dispute. In view of the foregoing and the federal policy that any disputes of arbitration related to waiver be resolved in favor of arbitration, the court concludes that MCM has not waived its right to arbitrate this dispute. As there is no dispute that the Subcontract contains an Arbitration Provision that covers the dispute at issue, *see* ECF No. 58 at p. 3, the court will grant the Motion.

**B. Proper Remedy**

There remains the question whether dismissal or stay of this action is proper. MCM requests dismissal; ARCO does not address MCM's request. This court's prior summation of the law is instructive:

> There is "tension" within the Fourth Circuit regarding whether dismissal or a stay is appropriate when granting a motion to compel arbitration. *Aggarao*, 675 F.3d at 376. Ordinarily, the "'proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration,'" under Section 3 of the FAA, "'rather than to dismiss outright.'" *Aggarao*, 675 F.3d at 376 n.18 (citation omitted). However, Fourth Circuit case law indicates that dismissal, rather than a stay, may be "a proper remedy when *all* of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (emphasis added); *see also Aggarao*, 675 F.3d at 376 n.18 (discussing *Choice Hotels* and status of circuit split as to

---

[6] Even were ARCO focused solely on MCM's delay in seeking to compel arbitration following this court's summary judgment ruling, the court would not be persuaded. The court ruled on the cross motions on July 11, 2023, holding that obligations under CO 25-S were governed by the Subcontract, not the Settlement Agreement. Thereafter, the parties engaged in a settlement conference with a United States Magistrate Judge. Within seven days of the settlement conference, MCM moved to compel arbitration. *Cf. Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376, 393–95 (2019) (noting that the court previously held that a six-month delay in demanding arbitration was not untimely; rather, it was "understandable under the circumstances," as the time was spent ensuring clarifying whether "the claims were covered by the arbitration provision at issue").

"whether a district court has discretion to dismiss rather than stay an action subject to arbitration").

As Judge Chasnow noted in *Taylor v. Santander Consumer USA, Inc.*, DKC-15-0442, 2015 WL 5178018, at *7 (D. Md. Sept 3, 2015), despite the "disagreement within the Fourth Circuit as to [whether] dismissal is appropriate, . . . district courts within the Fourth Circuit have continued to find dismissal appropriate." *See, e.g.*, *Willcock*, 2018 WL 3970474, at *5; *Garrett*, 2018 WL 3579856, at *4 ("The FAA requires a district court to stay judicial proceedings involving issues covered by arbitration agreements. Dismissal is also a proper remedy under the circumstances." (citation omitted)); *Bracey v. Lancaster Foods, LLC*, RDB-17-1826, 2018 WL 1570239, at *7 (D. Md. Mar. 30, 2018) ("Having determined that Bracey is bound by the Arbitration claims.") (citing *Choice Hotels*); *Washington v. Lennar Corp.*, TDC-17-0079, 2018 WL 722418, at *3 (D. Md. Feb. 5, 2018) ("While the FAA further requires only that this Court stay the proceedings pending that arbitration, 'dismissal is pro[p]er when all of the issues presented in a lawsuit are arbitrable. . . . Here, all of Washington's claims against Lennar are within the scope of the parties' arbitration clause. The Court will thus dismiss Washington's claims.").

*Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 557–58 (D. Md. 2019) (emphasis in original). Indeed, this court has repeatedly dismissed claims on a motion to compel arbitration where all claims at issue were within the scope of an applicable arbitration provision. *See, e.g.*, *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d 95, 117 (D. Md. 2021); *Malamatis v. ATI Holdings, LLC*, No. CV ELH-21-2226, 2022 WL 1591406, at *26 (D. Md. May 19, 2022); *Howle v. United Health Grp., Inc.*, No. 8:20-CV-00691-LKG, 2021 WL 4148891, at *3 (D. Md. Sept. 13, 2021); *Taylor v. Santander Consumer USA, Inc.*, No. CIV.A. DKC 15-0442, 2015 WL 5178018, at *7 (D. Md. Sept. 3, 2015); *see also In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 856 (D. Md. 2013) ("[D]istrict courts in the Fourth Circuit have recognized that dismissal, rather than a stay of trial pending arbitration, is appropriate where a court rules that all of a plaintiff's claims must be arbitrated.").

Because the sole remaining claim at issue in this action—ARCO's breach of contract claim—is subject to the Arbitration Provision, the court finds that dismissal of this action, rather than a stay, is appropriate.

**IV.      CONCLUSION**

Accordingly, for the reasons set forth herein, by separate order, the Motion will be granted, and this case will be dismissed.

September 4, 2024                                        /s/_____
                                                        Julie R. Rubin
                                                        United States District Judge